688 A.2d 1036

KENNETH E. JOEL, PLAINTIFF–APPELLANT, v. VINCENT MORROCCO AND JOSEPH PARLAVECCHIO, DEFENDANTS–RESPONDENTS, AND JOSEPH SILVESTRI, DEFENDANT.

Argued September 25, 1996—Decided February 26, 1997.

*Kenneth E. Joel* argued the cause *pro se.*

*Edward C. Eastman* argued the cause for respondent *Vincent Morrocco (Lomurro, Davison, Eastman & Munoz,* attorneys).

*Robert J. Sussman* submitted a letter in lieu of brief on behalf of respondent Joseph Parlavecchio and relied upon the arguments presented on behalf of respondent Vincent Morrocco (*Sussman & Altwarg,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns an application of the entire controversy doctrine. The essential question is whether a party making a judicial challenge to zoning approvals granted to a partnership must name in that land-use suit the individual partners in the partnership as a precondition to later enforcement of a money settlement against the partners. We find that joinder of the partners was not necessary to the resolution of the zoning suit and that the individual partners may not invoke the entire controversy doctrine as a defense to their liability on the monetary settlement made on behalf of the partnership.

## I

In a series of recent cases, we have reviewed the principles of the entire controversy doctrine. *Prevratil v. Mohr,* 145 *N.J.* 180, 678 *A.*2d 243 (1996); *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.*2d 509 (1995); *DiTrolio v. Antiles,* 142 *N.J.* 253, 662 *A.*2d 494 (1995); *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 662 *A.*2d 523 (1995). There is no need to review those principles in detail. "The objectives behind the doctrine are threefold: (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." *Mystic Isle, supra,* 142 *N.J.* at 322, 662 *A.*2d 523. The entire controversy doctrine seeks to further these objectives by requiring that, whenever possible, "the adjudication of a legal controversy should 'occur in one litigation in only one court." *Cogdell v. Hospital Ctr.,* 116 *N.J.* 7, 15, 560 *A.*2d 1169 (1989). The doctrine requires parties to a controversy before a court to assert all claims known to them that stem from the same transactional facts, even those against different parties. The doctrine fosters the "goals of efficient judicial administration and fairness" to parties. *Prevratil, supra,* 145 *N.J.* at 187, 678 *A.*2d 243.

The most clear-cut applications of the party-joinder rule are in *Crispin v. Volkswagenwerk A.G.,* 96 *N.J.* 336, 476 *A.*2d 250 (1984); *Cogdell, supra,* 116 *N.J.* 7, 560 *A.*2d 1169; and *DiTrolio, supra,* 142 *N.J.* 253, 662 *A.*2d 494. In *Crispin,* the claimant's attorney quite deliberately withheld from resolution in a pending automobile accident case a claim against the manufacturer of the automobile for manufacture of a defective vehicle. A second suit would have necessitated a rerun of the first case to determine that part of the claimant's injuries attributable to the crash-worthiness of the car and the portion of the injuries that would have occurred in any event. In *Cogdell,* injured claimants alleging medical malpractice first sued the doctors alleged to have negligently caused

serious injuries to an infant during delivery and then later sued the hospital and its staff for causing the same injuries. The Court stated that the failure to join the hospital and its staff in the first lawsuit was "inconsistent with all of the policies that surround the entire controversy doctrine." *Cogdell, supra,* 116 *N.J.* at 26, 560 *A.*2d 1169. The Court held that "to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy." *Ibid.* In *DiTrolio,* a physician first sued for restoration of privileges to practice at a hospital and later attempted to sue many of the same physicians who had participated in the evaluation of the underlying licensing decision.

"The polestar of the application of the [entire controversy] rule is judicial fairness." *DiTrolio, supra,* 142 *N.J.* at 272, 662 *A.*2d 494. Fairness in the context of party joinder focuses on basic fairness to all of the parties, but especially to those named in the second suit who claim prejudice from not participating in the first suit. It is a protective concept that focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation. Thus, for example, in *DiTrolio,* when the doctors named as defendants in the second action were deposed as witnesses during the discovery period in the earlier action, they would have approached the depositions and the discovery process differently.

Fairness to the plaintiff must also be considered. We have emphasized that the plaintiff must be actually aware of the actionable conduct when the original suit is brought. Thus, to bar a claim, a plaintiff "must have had a fair and reasonable opportunity" to have made the claim in the first action and have chosen not to do so. *DiTrolio, supra,* 142 *N.J.* at 273, 662 *A.*2d 494.

Efficiency in accomplishing the comprehensive and conclusive determination of a legal controversy is the third aspect of fairness.

"At its most fundamental level inefficiency is a duplication of lawsuits and multiple actions, each involving the identical controversy and the same witnesses." *DiTrolio, supra,* 142 *N.J.* at 277, 662 *A.*2d 494. In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation. *Id.* at 267–68, 662 *A.*2d 494.[1] In *DiTrolio,* the Court found that "substantially the same evidence that would be adduced in the first action" would have been adduced in the second action. 142 *N.J.* at 278, 662 *A.*2d 494. In *Mystic Isle,* the Court found that "requiring Mystic to join the attorney-defendants would have resulted in a more comprehensive determination of the underlying legal controversy that sought to determine who was responsible for [an] insufficient number of sewer permits" needed for a development project. 142 *N.J.* at 327, 662 *A.*2d 523.

In this case, none of the facts giving rise to the first action would be adduced in the second action. The first action was a complaint in lieu of a prerogative writ challenging the issuance of a zoning approval. The matter would have been tried on the basis of the administrative record before the local agency. The assertion of the personal claims against the partners was not at all necessary to the "comprehensive and conclusive" determination of the underlying legal controversy in the land-use case. Defendants, however, assert that once Ms. Maloy agreed to a money settlement and took steps to enforce the settlement, she was bound to join the individual partners.

---

1 In *DiTrolio,* we phrased the inquiry thus:

We must determine whether the entire controversy doctrine is applicable to bar the current action because the facts giving rise to the tort claims against the doctors and their medical group also gave rise to the claims against the hospital and its trustees in the earlier action. The issue is, basically, whether a sufficient commonality of facts undergirds each set of claims to constitute essentially a single controversy that should be the subject of only one litigation.

[142 *N.J.* at 258, 662 *A.*2d 494.]

## II

We appreciate that a good measure of confusion arose because the parties focused the court's attention on the fairness of the retroactive application of the Appellate Division decision in *Seventy–Three Land, Inc. v. Maxlar Partners,* 270 *N.J.Super.* 332, 637 *A.*2d 202 (App.Div.1994). *Seventy–Three Land* held that in order to impose individual liability on partners in excess of partnership assets a creditor must have first joined the partners in the action on the debt against the partnership. This case began seven years before *Seventy–Three Land,* in 1987, when the Keyport Planning Board granted permits to Watersedge, a partnership of the State of New Jersey (Watersedge), to construct nine condominium units on premises (the Keyport property) that adjoined property owned by Ethel Maloy (Maloy). Maloy first sued on October 1, 1987, to set aside the approvals. On May 17, 1988, the Superior Court set aside the approvals. Watersedge thereafter reapplied and the Planning Board approved a scaled down version of the project. The Keyport ordinance permitted multi-family uses under certain circumstances, but required that eighty percent of the units be one-bedroom or efficiency units, and that other lot size requirements be met. Maloy filed suit again in 1988 to void the action of the Planning Board. In April 1989, Watersedge offered to settle the claims of Maloy for a sum of money. The settlement contemplated a sliding scale of payments depending on the number of units constructed, with a minimum payment of $23,800 and the execution of a mortgage on the property to secure the settlement. When Maloy sought to be paid, the partnership denied that there had been a settlement. Plaintiff moved to enforce the settlement. On October 9, 1990, the trial court found that a settlement had been made and entered an order in favor of Maloy requiring the partnership to execute the settlement agreement, deliver the mortgage, and make payment of the monies called for in the agreement. When the partnership still refused to honor the settlement, Maloy made a motion in aid of litigant's rights. On June 28, 1991, the court appointed an attorney-in-fact to execute the settlement documents on behalf of the partnership. On

January 16, 1992, Maloy assigned her rights in the settlement to her attorney, Kenneth Joel (Joel). In October 1992, Joel deposed Vincent Morrocco, a Watersedge partner, and learned for the first time that Joseph Parlavecchio was a member of the partnership. Until that time Joel had dealt only with Morrocco and Joseph Silvestri, another Watersedge partner.

In December 1992, Joel brought this action in the Law Division of Monmouth County Superior Court, against the individual Watersedge partners to require payment of the settlement. On defendants' motion asserting that the claim was barred by the entire controversy doctrine, the trial court dismissed the complaint, finding *Seventy–Three Land* to be dispositive. The court understood *Seventy–Three Land* to provide that if a creditor of a partnership sues a partnership on a debt and fails to join the individual partners in the action, a creditor is barred under the entire controversy doctrine from bringing the same claim against the individual partners in a subsequent action. The court found that that principle bars Joel from proceeding against the individual partners of Watersedge after having failed to join the partners of Watersedge in the initial suit. Joel argued that the land-use action had been concluded in 1991 and that the 1994 decision in *Seventy–Three Land* should not be applied retroactively. *See Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n,* 243 *N.J.Super.* 624, 581 *A.*2d 109 (App.Div.1990) (requiring new mandatory party-joinder rule be applied only to first level litigation pending and not on appeal). Defendants argued that *Cogdell* was decided on July 24, 1989, before the 1990 order of judgment.

Joel also relied on case law prior to *Seventy–Three Land* that held that suits against individual partners for a partnership contract debt under the Uniform Partnership Act were prohibited until it was shown that the partnership assets were exhausted. These cases had been noted but distinguished by the *Seventy–Three Land* court. *Head v. Henry Tyler Constr. Corp.,* 539 *So.*2d 196 (Ala.1988); *Catalina Mortgage Co., Inc. v. Monier,* 166 *Ariz.* 71, 800 *P.*2d 574 (1990); *McCune & McCune v. Mountain Bell*

*Tel.,* 758 *P.*2d 914 (Utah 1988). New Jersey case law had suggested that although service upon a partnership could be accomplished by serving a partner or managing agent, *Rule* 4:4–4(5), *X–L Liquors, Inc. v. Taylor,* 17 *N.J.* 444, 111 *A.*2d 753 (1955), it was necessary to name the partners individually to obtain a judgment against partners in excess of partnership assets. *Neustadter v. United Exposition Serv. Co.,* 14 *N.J.Super.* 484, 82 *A.*2d 476 (Ch.Div.1951).

On appeal, in an unreported decision, the Appellate Division affirmed. It held that "the entire controversy doctrine already required that a contract creditor sue both the partnership and the partners in one action so that all issues could be decided expeditiously and the assets of each court be marshalled and executed appropriately." We granted plaintiff's petition for certification. 143 *N.J.* 517, 673 *A.*2d 276 (1996). Of course we agree, putting aside for a moment the problem of fairness in retroactive application of *Seventy–Three Land,* that a contract creditor should sue both partnership and partners if the creditor seeks recovery in excess of partnership assets. The problem is that the first suit was not a suit by a contract creditor of the partnership; it was a prerogative writ action brought by an objector to land development approvals. No "commonality of facts undergirds each set of claims." *DiTrolio, supra,* 142 *N.J.* at 258, 662 *A.*2d 494.

### III

In each of our applications of the entire controversy doctrine we have emphasized the essential unfairness of forcing parties and courts to rerun a course previously run. In this case, there is no occasion, as in *DiTrolio, Cogdell,* and *Crispin,* to rerun the course. These were two separate actions, not two causes of action arising from the same transactional facts. The United States Supreme Court has held that a breach of an agreement that produced the dismissal of an earlier federal suit is an entirely distinct cause of action that must have an independent basis of federal jurisdiction.

*Kokkonen v. Guardian Life Ins. Co.*, 511 *U.S.* 375, 114 *S.Ct.* 1673, 128 *L. Ed.*2d 391 (1994).

> The short of the matter is this: The [later] suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit.... The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business.
>
> [*Id.* at 381, 114 *S.Ct.* at 1677, 128 *L.Ed.*2d at 397–98.]

It is as though the partnership had given plaintiffs a promissory note in novation of the original dispute. The partners could not plead the entire controversy doctrine in defense of a suit on such a note. At best, they could argue in the suit on the note that it would be necessary to join the partnership and all of the partners in order to impose personal liability beyond the assets of the partnership.

The core values of the entire controversy doctrine require disposition in one proceeding of all claims against all parties that are necessary to the fair disposition of an underlying controversy. As noted, the linchpin of defendants' argument is that when Maloy agreed to accept the money settlement in October 1990, the *Cogdell* decision had already come down, thereby placing Maloy on notice that she would be "at risk" if she did not join the individual partners. It asks too much of the entire controversy doctrine to require a lawyer in a prerogative writ action to anticipate that a settling party may become insolvent and thus must join all the partners in an underlying non-contractual action in order to settle that case. *Rule* 4:4–4(5) made the original service on one of the partners effective to bring the partnership before the court. There was no need to replead in the land-use action.

The entire controversy doctrine is not intended to be a trap for the unwary. As noted, the doctrine is easily recognized in the context of the calculated fragmentation of litigation as in *Crispin* and *Cogdell,* when parties for strategic reasons have withheld claims concerning the underlying controversy and seek two bites at the apple. In other contexts the commonality of claims arising from the transactional circumstances may not be as stark. In

each application of the doctrine, a careful analysis of the relevant factors must be made. In *Prevratil*, we held that the "twin pillars of the entire controversy doctrine," fairness to the parties and fairness to the system of judicial administration, 145 *N.J.* at 197, 678 *A.*2d 243, required a remand to determine whether the claimant had been fairly apprised of the previous proceedings and had withheld the claim or would, because of the circumstances of the claimant's case, be unfairly prejudiced by application of the entire controversy doctrine. We said that "equitable considerations can relax mandatory-joinder requirements when joinder would be unfair." *Id.* at 190, 678 *A.*2d 243.

In this case, there is no unfairness in the second proceeding to defendant partners. The first proceeding was not an action on a partnership debt. It was the partnership that converted the first proceeding into a new obligation. *Kokkonen, supra,* 511 *U.S.* 375, 114 *S.Ct.* 1673, 128 *L.Ed.*2d 391. In fact, we are informed that the first case had been marked "settled" on the court's docket on April 22, 1991, before the partnership reneged on its debt and the money judgment was entered. At the time when the settlement was breached, there was no pending case in which to join the individual partners. *See Molnar v. Hedden,* 138 *N.J.* 96, 104, 649 *A.*2d 71 (1994) (holding that an amended pleading could not relate back to an earlier filing once a case had been settled: "nothing remained to which the counterclaim could relate back").

There is no unfairness to courts because the original proceedings did not involve resolution of this later controversy. The hearing before the first-level court concerned whether conditions of the alleged settlement had been omitted, such as consent of the construction mortgagee. The partners insist that the court in this second-level action will have to relitigate the terms of the settlement, that is, whether the settlement was intended to bind only the partnership property and not the partners, thus necessitating a second plenary hearing. We disagree. The liability of the partners for partnership debt will be resolved by the Uniform Partnership Law. *N.J.S.A.* 42:1–9 to –43. The debt of the part-

nership was created to end the first litigation, not to be part of it. The unfairness would be to plaintiff, who would be penalized for not having joined in a land-use action individual partners not necessary to the disposition of that matter at a time when the law was unsettled as to whether individual partners could be joined in an action on a debt before partnership assets were exhausted.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for further proceedings on plaintiff's complaint.

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.