Stuart RHODES, et al., Plaintiffs,

v.

TOWNSHIP OF SADDLE BROOK, et al., Defendants.

No. CIV. A. 97–68.

United States District Court, D. New Jersey.

Oct. 9, 1997.

the Town Council of Saddle Brook, Raymond Santa Lucia, John Sistaro, Robert Kugler, Robert White, John Rendzia, Charles Cerone, and Joseph Carroll ("defendants") violated their civil rights. Prior to the institution of this action, defendant Saddle Brook filed an action in the Superior Court of New Jersey against Stuart Rhodes, Rhodestar, and A.B. Family Centers, Inc. ("AB") in which Saddle Brook moved to restrain Stuart Rhodes, Rhodestar, and AB from using a piece of real property to sell and rent sexually explicit merchandise and videos. Saddle Brook argued that the use of the property violated Township Ordinances and N.J.S.A. 2C:34–7, which regulates the location of sexually oriented businesses. The trial court denied Saddle Brook's requests for a temporary restraining order and a preliminary injunction, and ruled that Saddle Brook's Peace and Good Order Ordinance was unconstitutional and that N.J.S.A. 2C:34–7 was unconstitutional as applied. Defendants now move for summary judgment based on the entire controversy doctrine. The Court finds that the entire controversy doctrine bars plaintiffs' claims.

## BACKGROUND

### Facts and State Court Proceedings [1]

Rhodestar owns a piece of real property known as 205 Route 46, Saddle Brook, NJ. In 1995, Route 46 Video, Inc. became plaintiffs' tenant. Route 46 Video wanted to engage in the business of selling and renting sexually explicit merchandise and videos.[2] On April 12, 1995, defendant John Sistaro, the Saddle Brook Construction Official, issued Rhodestar a permit, which provided a continuing Certificate of Occupancy for the operation of a video store at 205 Route 46. In May 1995, Sistaro voided the Certificate of Occupancy after discovering the nature of Route 46 Video's business. In response, Route 46 Video filed a Verified Complaint and Order to Show Cause against Saddle Brook in the Superior Court of New Jersey, Law Division, Bergen

Jay Joseph Friedrich, Peter J. Heck, Gallo, Geffner, Fenster, Hackensack, NJ, for Plaintiffs.

Sharon Handrock Moore, Gebhardt & Kiefer, Clinton, NJ, for Defendants.

## OPINION

WOLIN, District Judge.

Stuart Rhodes and Ingrid Rhodes, individually, Rhodestar Realty Company ("Rhodestar"), and Omni Distribution Systems, Inc. ("plaintiffs") filed this action claiming that the Township of Saddle Brook, Members of

---

1. The essential facts of this case are not in dispute and are not critically important to the Court's determination of whether the entire controversy doctrine bars plaintiffs' claims. *See* Pls. Br. at 6–7.

2. Plaintiffs disagree with this assertion. They argue that Route 46 wanted to operate a video store, which would rent family as well as adult videos.

County. In seeking a temporary restraining order, Route 46 Video claimed that Saddle Brook violated its First Amendment rights. The trial court denied Route 46 Video's request, and the Appellate Division denied interlocutory appellate review. Ultimately, the trial court dismissed for lack of prosecution.

On September 7, 1995, plaintiff's new tenant, AB, submitted an application for a Certificate of Occupancy to John Sistaro. Sistaro denied the application because AB did not have site plan approval, because AB had not shown that the parking for the store complied with the zoning ordinance, and because AB's signs did not conform to the zoning ordinance. After the Board of Adjustment denied AB's appeal, AB advised Sistaro that it opened its video business under the Certificate of Occupancy issued to plaintiffs on April 12, 1995. Sistaro determined that that Certificate was issued for a different purpose, but AB continued to operate its business. On January 4, 1996, defendants Council of Saddle Brook and Raymond Santa Lucia, Mayor and Administrator of Saddle Brook, passed the Peace and Good Order Ordinance, which prohibits the operation of an adult video store in Saddle Brook. AB also ignored Sistaro's cease and desist order.

On February 6, 1996, defendants filed a Verified Complaint by way of Order to Show Cause against Stuart Rhodes, Rhodestar, and AB in the Superior Court of New Jersey, Law Division, Bergen County, seeking to prevent AB from operating its business in violation of Township Ordinances and Orders issued by Sistaro. On February 7, 1996, the trial court denied defendants' application for a temporary restraining order. On March 22, 1996, the trial court entered an Order denying defendants' application for a preliminary injunction pending the outcome of a plenary hearing.

On April 15, 1996, defendants filed an Amended Complaint alleging that plaintiffs were in violation of N.J.S.A. 2C:34–7, which regulates the location of sexually oriented businesses in New Jersey. On or about May 6, 1996, plaintiffs and AB filed its Answer to the Amended Complaint, asserting, among other things, that the Township Ordinances and N.J.S.A. 2C:34–7 were unconstitutional. Plaintiffs did not, however, assert any counterclaims in their Answer, and they signed a Certification stating "(2) no other action or proceeding is contemplated; and (3) no other necessary party to be joined in the subject litigation is presently known." In addition, plaintiffs never filed a motion to assert a counterclaim.

The trial court permitted limited discovery between the time of plaintiffs' answer and the date of the hearing, which was June 12, 1996. On July 26, 1996, the trial court issued a written opinion in which it concluded that defendants selectively enforced its ordinances, that defendants' Peace and Good Order Ordinance violated the First Amendment of the United States Constitution, and that N.J.S.A. 2C:34–7 was unconstitutional as applied by defendants. On September 9, 1996, the trial court entered an Order of Judgment granting the Certificate of Occupancy.

Defendants appealed the trial court's judgment. The Appellate Division granted the Attorney General's motion to intervene. The parties have briefed their positions, and they are waiting for oral argument.

On January 9, 1997, plaintiffs filed their Complaint in this Court. The crux of the Complaint is

that defendants set out on a plan of harassment and intimidation geared towards the singular purpose of disrupting and making it impossible for plaintiffs and plaintiffs' tenant to conduct business. Such acts included improper revocation of a previously issued certificate of occupancy; improper and unnecessary inspections and citations; police harassment; and the removal of substantially all available parking for plaintiffs' property.

(Pls. Br. at 7). Many of the facts alleged in the Complaint recite the problems plaintiffs and Route 46 Video had with defendants. *See* Compl. ¶¶ 18–50. Moreover, plaintiffs allege many facts that occurred prior to the date that defendants instituted their state action or before the state court conducted its hearing. *See* Compl. ¶¶ 18–50. Plaintiffs also contend that defendants continue to harass and intimidate them.

Defendants have moved for summary judgment, arguing that "the Entire Controversy Doctrine required Plaintiffs to bring all their claims arising out of the subject controversy in the two earlier state actions." (Defs. Br. at 5).

## DISCUSSION

### 1. Standard for Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons*, 871 F.2d 409, 419 (3d Cir.1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment must be granted if *no reasonable trier of fact could find for the non-moving party. See id.*

### 2. 28 U.S.C. § 1738

▇ The Full Faith and Credit Act provides:

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. As the Supreme Court has stated, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); *see also Peduto v. City of N. Wildwood*, 878 F.2d 725, 728 (3d Cir.1989) (same). The Full Faith and Credit Act has been extended to civil rights actions brought pursuant to 42 U.S.C. § 1983. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 76, 104 S.Ct. 892, 893, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 97, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980).

▇ Federal courts do not, however, give full faith and credit to state court judgments when the party in the state court did not have a full and fair opportunity to litigate her claim. *See, e.g., Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982); *Allen*, 449 U.S. at 95, 101 S.Ct. at 415. A state court is deemed to have given a party a full and fair opportunity to litigate her claim if the court complies with the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. *See Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897–98. Thus, in this instance, the Court must determine the preclusive effect that the trial court would give its judgment in the Saddle Brook summary proceeding, and must determine whether the first proceeding comports with the Due Process Clause.

### 3. The Entire Controversy Doctrine

#### a. Overview

▇ "The entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit." *Olds v. Donnelly*, 150 N.J. 424, 431, 696 A.2d 633 (1997). The doctrine contains two aspects: (1) claims joinder and (2) party joinder. Claims joinder "requires that parties should present all affirmative claims and defenses arising out of a controversy." *Id.* (citations omitted). Party joinder "requires the mandatory joinder of all parties with a material interest in a controversy." *Id.* at 432, 696 A.2d 633 (citation omitted).

■ The entire controversy doctrine serves three purposes:

> (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation.

*Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 N.J. 310, 322, 662 A.2d 523 (1995).[3] In essence, "[t]he doctrine fosters the goals of efficient judicial administration and fairness" to parties. *Joel v. Morrocco,* 147 N.J. 546, 548, 688 A.2d 1036 (1997) (quotation omitted).

The entire controversy doctrine is so embedded in the New Jersey legal system that it is contained in the 1947 New Jersey Constitution:

> Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief should be granted in any cause so that all matters in controversy between the parties may be completely determined.

■ Since the signing of the 1947 Constitution, claims joinder has evolved from the joinder of legal and equitable issues in the Chancery Division, *see Steiner v. Stein,* 2 N.J. 367, 378, 66 A.2d 719 (1949), to the mandatory joinder of defenses and counterclaims. *See, e.g., Massari v. Einsiedler,* 6 N.J. 303, 313, 78 A.2d 572 (1951). "Mandatory joinder of claims was incorporated into the rules of court in 1979." *Olds,* 150 N.J. at 433, 696 A.2d 633 (citing N.J. R. Civ. P. 4:27–1(b), *superseded by* N.J. R. Civ. P. 4:30A). The doctrine requires that "all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Cogdell v. Hospital Ctr.,*

116 N.J. 7, 15, 560 A.2d 1169 (1989). "In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." *Mystic Isle,* 142 N.J. at 323, 662 A.2d 523.

■ Party joinder developed more slowly, but in *Crispin v. Volkswagenwerk, A.G.,* 96 N.J. 336, 476 A.2d 250 (1984), the Supreme Court noted that known parties should be joined in a single pending action. *Id.* at 343, 476 A.2d 250. In *Cogdell, supra,* the Supreme Court extended the entire controversy doctrine to mandatory party joinder because "the commonality of purposes in both the party joinder and claims-joinder rules indicates that they are conceptual subsets of the entire controversy doctrine." 116 N.J. at 20, 560 A.2d 1169. Thus, "to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy." *Id.* at 23, 560 A.2d 1169. A party has a material interest if he "can affect or be affected by the judicial outcome of a legal controversy." *Id.*

Following its decision in *Cogdell,* the Supreme Court of New Jersey codified the entire controversy doctrine by adopting Rule 4:30A of the New Jersey Rules of Civil Procedure, which provides:

> Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64–5 (foreclosure actions) and R. 4:67–4(a) (leave required for counterclaim or cross-claims in summary actions).

"*Rule* 4:30A advances the purpose of *Rule* 4:5–1, which requires each party to submit

---

**3.** With its decision in *Olds, supra,* the Supreme Court of New Jersey overruled its decisions in *Mystic Isle* and *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 662 A.2d 509 (1995), and held that the entire controversy doctrine no longer applies to legal malpractice. *See*

discussion *infra* p. 783. The Supreme Court's opinion in *Olds* did not, however, overrule the Court's prior pronouncements on the entire controversy doctrine. Thus, this Court continues to rely on the statements of law in *Mystic Isle.*

with its first pleading a certification whether the matter in controversy is the subject of any other action pending or whether any other action is contemplated." *Olds,* 150 N.J. at 434, 696 A.2d 633 (citing N.J. R. Civ. P. 4:5–1(b)(2)). Furthermore, Rule 4:30A works in conjunction with Rule 4:7 of the New Jersey Rules of Civil Procedure, which makes counterclaims not asserted subject to the entire controversy doctrine. Rule 4:5–1 of the New Jersey Rules of Civil Procedure also provides "that a party has a continuing obligation during the course of litigation to disclose the names of any other parties who should be joined in the action." *DiTrolio v. Antiles,* 142 N.J. 253, 276, 662 A.2d 494 (1995).

During the development of the entire controversy doctrine, the Supreme Court of New Jersey has recognized that "the boundaries of the doctrine are not limitless." *Mystic Isle,* 142 N.J. at 323, 662 A.2d 523. Most notably, the Supreme Court has directed courts not to apply the doctrine "to component claims that are unknown, unarisen, or unaccrued at the time of the action." *Id.* (citations omitted). Courts should also refrain from invoking the doctrine if "joinder would result in significant unfairness or jeopardy to a clear presentation of the issues and just result." *Cogdell,* 116 N.J. at 27, 560 A.2d 1169 (quoting *Crispin,* 96 N.J. at 354–55, 476 A.2d 250 (Handler, J., concurring)).

In the past two years, the Supreme Court of New Jersey has significantly reigned in the doctrine. In *Hernandez v. Region Nine Housing Corp.,* 146 N.J. 645, 684 A.2d 1385 (1996), the Supreme Court stated that " 'application of the [entire[ ]controversy] doctrine requires equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum.' " *Id.* at 661, 684 A.2d 1385 (quoting *Perry v. Tuzzio,* 288 N.J.Super. 223, 230, 672 A.2d 213 (App.Div.1996)). In *Joel, supra,* the Supreme Court held that a party challenging zoning approvals granted to a partnership need not join the individual partners in the land-use suit "as a precondition to later enforcement of a money settlement against the partners." 147 N.J. at 547, 688

A.2d 1036. Finally, in *Olds, supra,* the Supreme Court reversed its prior opinions and held that attorney-malpractice actions are excluded from the entire controversy doctrine. 150 N.J. at 442, 696 A.2d 633.

 The entire controversy doctrine is an equitable principle, and ultimately, "its application is left to judicial discretion based on the particular circumstances inherent in a given case." *Mystic Isle,* 142 N.J. at 323, 662 A.2d 523. In their discretion, trial courts may "segregate different claims to assure manageability, clarity and fairness." *Id.* at 324, 662 A.2d 523 (citation omitted). However, "[a] plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later." *Id.* (citation omitted). In other words,

> [t]he entire controversy doctrine does not require that all claims be adjudicated in one proceeding, it merely requires that a party assert those claims at the outset. The trial court has the discretion to structure the litigation to assure efficient administration, clarity and fairness. Thus, it is the party's original compliance with the doctrine, rather than the absence of a conclusive determination of a claim, that ensures preservation of that claim.

*Id.* at 332, 662 A.2d 523.

#### b. As Applied to Summary Actions

 Plaintiffs argue that the entire controversy doctrine does not preclude their action because equality of forum does not exist between this Court and the court that heard defendants' "summary action" because the first proceeding did not afford them a "full and fair opportunity" to litigate their claims with the same remedial opportunities that are present in this Court. According to plaintiffs, defendants instituted the first action to obtain a temporary restraining order and later a preliminary injunction so that it could prohibit plaintiff and its tenant from operating its business. Defendants, on the other hand, claim that the summary nature of the proceedings is irrelevant, and that plaintiffs had an obligation to assert any counterclaim against Saddle Brook as well as

to join the other defendants and plaintiffs named in plaintiffs' Complaint because they are necessary for a full and complete adjudication of this matter.

Rule 4:67–1(a) of the New Jersey Rules of Civil Procedure permits courts to conduct summary actions, which are "designed 'to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment[.]'" *Perretti v. Ran–Dav's County Kosher, Inc.,* 289 N.J.Super. 618, 623, 674 A.2d 647 (App. Div.1996) (quoting Pressler, *Current N.J. Court Rules,* comment on N.J.R. Civ. P. 4:67–1 (1995)). A party seeking to assert a counterclaim in a summary action must obtain the court's permission because "[t]he inclusion of issues that require plenary consideration is inimical to the design of the rule." *Id.* (citing N.J. R. Civ. P. 4:67–4(a)). Rule 4:67–4(a) of the New Jersey Rules of Civil Procedure provides:

> If the order to show cause is issued ex parte pursuant to R. 4:67–1(a), the defendant shall, not later than 3 days before the return date, or within such further time as the court may allow, serve and file either an answer, an answering affidavit, or a motion returnable on the return day.... No counterclaim or cross-claim shall be asserted without leave of court.

Thus, as stated *supra,* Rule 4:30A treats counterclaims brought pursuant to Rule 4:67–4(a) differently than those brought in non-summary actions.

Although the panel in *Perry v. Tuzzio,* 288 N.J.Super. 223, 672 A.2d 213 (App.Div.1996), recognized the expansive application of the entire controversy doctrine, it concluded that a plaintiff who failed to join parties at a hearing on exceptions to an executor's account could proceed in an action at law against those parties. *Id.* at 228, 231, 672 A.2d 213. The panel explained that accounting proceedings are limited to the interests of the estate and do not adjudicate claims that the estate may have against third parties; *i.e.,* the conduct of the executor is the court's focus. *Id.* at 229, 672 A.2d 213. The panel then stated:

> We think it plain that [the entire controversy's] invocation here would be inequitable. First, application of the doctrine requires equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum.

*Id.* at 230, 672 A.2d 213 (citing *Thornton v. Potamkin Chevrolet,* 94 N.J. 1, 5, 462 A.2d 133 (1983); *Cafferata v. Peyser,* 251 N.J.Super. 256, 261, 597 A.2d 1101 (App.Div.1991)).

The panel concluded that an accounting proceeding did not afford a full and fair opportunity to litigate a professional malpractice suit, and that an exceptant would not have been on notice that a failure to join parties related to the accounting would bar later claims against those parties. *Id.* The panel noted that no procedural mechanism existed for joining parties in this case—the plaintiff could not file a third-party complaint because no affirmative claim was made against him, and she could not file an amended complaint because she did not file a complaint in the first proceeding. *Id.* at 231, 672 A.2d 213. The panel added that if the plaintiff had sought to join the defendants at the exception hearing, the court would have denied the application, reserved the claim for future litigation, or granted the application and severed the claims. *Id.* (citation omitted). Finally, the panel stated that invoking the entire controversy doctrine in this instance "would constitute a trap for the unwary rather than a shield for the judicial system and its litigants against the unfair burden of multiple related separate actions." *Id.;* see also *Cafferata,* 251 N.J.Super. at 257, 597 A.2d 1101 (finding that entire controversy doctrine did not apply to bar plaintiff's medical malpractice claim when plaintiff appeared pro se in defendants' Special Civil Part collection case); *Erenberg v. Cordero,* 294 N.J.Super. 352, 363, 683 A.2d 567 (App. Div.1996) (holding that entire controversy doctrine did not bar estate of decedent, decedent's father, and decedent's stepmother from suing defendant because defendant and plaintiffs were not involved in first action, which settled claims insurance carriers).

In *B.F. v. Division of Youth and Family Services,* 296 N.J.Super. 372, 686 A.2d 1249

(App.Div.1997), the Appellate Division similarly held that "the entire controversy doctrine is inapplicable to actions brought by DYFS for the termination of parental rights." *Id.* at 380, 686 A.2d 1249. Thus, the panel permitted the plaintiffs to pursue a claim for damages under 42 *U.S.C.A.* § 1983. The panel explained that DYFS' complaints are summary actions because the extreme importance of an action to terminate a parental rights requires expeditious resolution. *Id.* at 381, 686 A.2d 1249 (citations omitted). The panel explained that "[r]equiring motion practice for the purpose of avoiding the preclusive effect of the entire controversy doctrine would obviously cause unwarranted delay in these cases so sensitive to the effects of delay." *Id.* at 382, 686 A.2d 1249. The panel then stated that no procedural mechanism existed for joining parties in summary actions. *Id.* (citing *Perry,* 288 N.J.Super. at 231, 672 A.2d 213). The panel added that parents and children involved in DYFS proceedings are represented by court appointed counsel, and those attorneys should not be burdened with pursuing other causes of action. *Id.*

In *Perretti, supra,* the Appellate Division explained that the entire controversy doctrine and the summary action are complementary despite the appearance that they are in conflict. 289 N.J.Super. at 623, 674 A.2d 647. Although the panel relied heavily on *Circle Chevrolet* and *Mystic Isle,* which have been overruled, as well as *DiTrolio* and *Mortgagelinq Corp. v. Commonwealth Land Title Insurance,* 142 N.J. 336, 662 A.2d 536 (1995), the panel's reasoning appears to be sound. The panel stated that an analysis of those cases makes it

> clear that the [Rule] 4:67–4(a) limitation on asserting a counterclaim or cross-claim in a summary action is not a prohibition. Rather, it is evident that leave must be obtained so as to afford the trial court an opportunity to manage the litigation between the necessary parties, providing for expeditious resolution of those issues that can be addressed quickly, and more thorough development of those that require plenary treatment.

*Id.* at 624, 674 A.2d 647. The panel then recited the *DiTrolio* Court's discussion about how the trial courts, not the parties, determine whether or not joinder is appropriate. *Id.* Thus, the Appellate Division concluded that "it was defendants' entire controversy obligation to raise their civil rights, torts and other causes of action by way of a motion for leave to file a counterclaim in the summary action" so that a trial court could have decided how to manage the case. *Id.* Ultimately, the panel remanded because the trial court should have severed and transferred the counterclaims rather than dismiss them for lack of jurisdiction. *Id.* at 625, 674 A.2d 647.

## 4. Decision

The New Jersey courts that have found that parties did not have a full and fair opportunity to litigate their claims in the first proceeding significantly differ from the case now before the Court. *Cafferata* was a Special Civil Part collection case with a pro se litigant, *Perry* involved a hearing to determine exceptions to an executor's account, *Erenberg* involved the settlement of claims by insurance carriers, *B.F.* was a DYFS complaint to terminate parental rights, *Hernandez* dealt with an EEOC hearing, and in *Thornton v. Potamkin Chevrolet,* 94 N.J. 1, 5, 462 A.2d 133 (1983), the Supreme Court found that a private arbitrator's ruling did not bar a later administrative complaint before the Division of Civil Rights. In all of those cases, the first proceeding provided a limited forum for the adjudication of a narrow issue.

In this case, the trial court conducted a plenary hearing to determine whether Stuart Rhodes, Rhodestar, and AB should be enjoined from operating its business and whether Saddle Brook's Township Ordinance and N.J.S.A. 2C:34–7 were unconstitutional. The hearing took place four months after defendants filed the initial complaint, limited discovery was conducted, and plaintiffs filed an Answer to the Amended Complaint in which they certified that no other actions were pending or contemplated. Unlike the first proceeding in *Cafferata, Perry, Erenberg, B.F., Hernandez,* and *Thornton,* the first proceeding in this case did not involve a court with limited jurisdiction or with a nar-

row purpose. The trial court could have presided over plaintiffs' claims. Thus, the first proceeding provided plaintiffs with a full and fair opportunity to litigate their claims. Moreover, plaintiffs have failed to show that the trial court's procedures violated the Due Process Clause.

The Supreme Court of New Jersey has not ruled on whether the entire controversy doctrine applies to summary actions. In the absence of such a ruling, a federal court should predict how the Supreme Court would rule. *See, e.g., Blum v. Witco Chemical Corp.,* 829 F.2d 367, 376 (3d Cir.1987) (quotation omitted). The Court is reluctant to provide an exception to the entire controversy doctrine even though the Supreme Court has recently curtailed the doctrine. Although the panel in *Perretti* relied on two cases that have subsequently been reversed, the Court finds that the Supreme Court would follow the reasoning in *Perretti.*

Summary actions and the entire controversy doctrine are not inherently incompatible. To the contrary, summary actions fit neatly into the entire controversy doctrine—if a plaintiff or defendant contemplates filing another action or an action is pending, then she should inform the court so that the court can decide whether to preside over the entire litigation. As stated in *Mystic Isle, supra,* the entire controversy doctrine requires parties to *assert* all claims at the beginning of the law suit, but does not require all claims to be *adjudicated* in one proceeding. 142 N.J. at 332, 662 A.2d 523. Moreover, as the panel in *Perretti, supra,* explained, the limitation contained in Rule 4:67-4(a) on asserting counterclaims in summary actions does not affect the application of the entire controversy doctrine. 289 N.J.Super. at 624, 674 A.2d 647. The panel added that parties "must" seek leave of the trial court so that the court can determine how to structure the litigation. *Id.*

The Court notes that the difference in the named parties between the first proceeding and this action is not dispositive. The only plaintiff that was not listed in the first proceeding is Omni Distribution Systems, Inc., which is a business that plaintiffs operate, and the additional defendants in this action are all employees of Saddle Brook. Those parties all had a relationship with the named parties in the first action and should have been joined because they were necessary for the complete resolution of this litigation. Moreover, the facts of this case are clearly related to those in the first proceeding, and the parties not involved in the first proceeding certainly had a material interest in the outcome of that proceeding. *See Mystic Isle,* 142 N.J. at 323, 662 A.2d 523. Lastly, judicial economy would have been served if plaintiffs had notified the trial court of its intention to file a suit.

The statements in *Perry* and *B.F.* that there is no procedural mechanism to join parties in summary actions are inapposite because this case presents a different factual basis. As stated *supra,* Stuart Rhodes and Rhodestar should have asserted a counterclaim. Following the assertion of that counterclaim, Stuart Rhodes could have filed an amended complaint to include the defendants who and plaintiff that were not involved in Saddle Brook's summary action. *See* N.J.R. Civ. P. 4:9-1.

The Court recognizes that plaintiffs' Complaint demonstrates egregious behavior by defendants and alleges a claim upon which relief can be granted. A well-pleaded complaint does not, however, dictate that the entire controversy doctrine does not bar a plaintiff's claim. Plaintiffs had the obligation to assert their counterclaims and to disclose the names of additional parties who were factually related to the first proceeding. If the plaintiffs had satisfied their obligation, the trial court could have decided how to structure the litigation.

■ Finally, plaintiffs argue that the entire controversy doctrine should not apply to defendants' conduct during the pendency of the summary action and since the trial court ruled on the summary action. That argument fails because the alleged conduct is part of a continuous pattern of conduct that began before the institution of the summary action. Continuous conduct that violates one's civil rights is part of the same factual predicate.

[I]f during the pendency of litigation, a constituent claim arises which is part of

the entire controversy, the claimant must seek leave to file a supplemental pleading thereby submitting to judicial discretion the determination of whether the claim should be joined in that action or reserved for a subsequent suit, and if the claimant fails to so move, he will ordinarily be barred from raising the claim in a subsequent suit.

*McNally v. Providence Washington Ins. Co.,* 304 N.J.Super. 83, 92, 698 A.2d 543 (App.Div. 1997). Moreover, a cause of action accrues when a plaintiff knows or should know of the facts underlying his claim, not when he understands the legal consequences of those facts. *See, e.g., Harley Davidson Motor Co. v. Advance Die Casting Inc.,* 150 N.J. 489, 502, 696 A.2d 666 (1997). Thus, plaintiffs cannot claim that some of their claims were unknown, unarisen, or unaccrued at the time of the first proceeding.

If defendants are in fact still violating plaintiffs' civil rights, then plaintiffs should move the trial court to issue an order to enforce its ruling. Such a motion is more consistent with the entire controversy doctrine than is the institution of an action in this Court for damages.

Thus, the summary nature of the proceeding does not alter the outcome in this case because plaintiffs should have sought leave of court to assert a counterclaim. Alternatively, plaintiffs could have notified the trial court that they intended to file a suit in federal court. The Court will, therefore, grant defendants' motion for summary judgment and will dismiss plaintiffs' claims with prejudice.