728 A.2d 857 (1999)
321 N.J. Super. 275
HILLSBOROUGH TOWNSHIP BOARD OF EDUCATION, Plaintiff-Respondent,
v.
FARIDY THORNE FRAYTA, P.C., itself and/or as successor in interest to Faridy Thorne Maddish, P.A., Middle State Engineering, Inc., itself and/or as successor in interest to J.M. DiGiancinto and Associates, Inc., Wagner-Hohns-Inglis, Inc., Biehn Construction Company, and E.P. Donnelly, Inc., Defendants-Respondents, and
J.W. DiNatale Mechanical Contractors, Inc., and Firemen's Insurance Company of Newark, New Jersey and/or Continental Insurance Company, as its successor in interest, Defendants, and
Paul E. Griggs, Esq., and James W. Broscious, Esq., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1999.
Decided May 20, 1999.
*858 James J. O'Neill for defendant-appellant Paul E. Griggs, Esq. (Fitzpatrick, Reilly, Supple & Gaul, New Providence, attorneys; joined in the brief filed by appellant Broscious).
Andrew L. Indeck, Bedminster, for defendant-appellant James W. Broscious, Esq. (Purcell, Ries, Shannon, Mulcahy & O'Neill, attorneys; Mr. Indeck, of counsel, Mr. Indeck and Kathleen J. Devlin, on the brief).
J. Barry Cocoziello, Newark, for plaintiff-respondent Hillsborough Township Board of Education (Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello attorneys; Mr. Cocoziello, on the brief).
Lawrence P. Powers, Princeton, for defendant-respondent Faridy Thorne Fraytak (Hill Wallack, attorneys; Mr. Powers and Fred Pugliese, on the brief).
Frederic J. Schragger, Lawrenceville, for defendant-respondent Wagner-Hohns-Inglis, Inc.
Defendant-respondent Middle State Engineering, Inc. did not file a brief.
Defendant-respondent E.P. Donnelly, Inc. did not file a brief.
Defendant-respondent Biehn Construction Company did not file a brief.
Before Judges KING, NEWMAN and FALL.
The opinion of the court was delivered by NEWMAN, J.A.D.
The appeal in this complex construction litigation involves application of the claim-joinder component of the entire controversy doctrine. We granted leave to defendant, James W. Broscious, Esq., to appeal from a November 20, 1998 order denying in part and granting in part his application requesting the motion judge to reconsider his August 16, 1996 order dismissing the amended complaint against defendants Faridy Thorne Fratak, Wagner-Hohns-Inglis, Inc., Middle State Engineering, Inc., Biehn Construction Company, and E.P. Donnelly, Inc. The November 20, 1998 order granted relief, reinstating the action against defendants Middle State, Biehn and Donnelly, but denied the motion as to Faridy and Wagner. We now reverse, holding that the claim-joinder component of the entire controversy doctrine does not bar subsequent design defect claims against architect and construction manager where equitable considerations weigh in favor of an adjudication of these claims on the merits and where the claims are separate and discrete from the negligent supervision claim dismissed during the first action.

*859 I.

The procedural history and facts surrounding this appeal may be summarized as follows. In 1989, the Hillsborough Township Board of Education (Hillsborough) entered into contracts for the construction of the Amsterdam Elementary School (school). These contracts called for the completion of the school for student occupancy by September 1990. The construction of the school proceeded under several general contracts, including plumbing contracts with J.W. DiNatale Mechanical Contracts (DiNatale or the plumber), and a general construction contract with Biehn Construction, Inc. (Biehn or general contractor). The architect on the project was Faridy Thorne Fraytak (Faridy or the architect) and the construction manager was Wagner-Hohns-Inglis (Wagner or the construction manager).
In 1990, after the school had been completed and occupied, Hillsborough discovered three construction defects: (1) use of lead-containing solder in the drinking water; (2) improper installation of ceiling fans; and (3) water infiltration through the roof and windows.
On November 4, 1992, Hillsborough filed a complaint alleging defects resulting from the use of lead-solder in the drinking water naming DiNatale and others as defendants. The construction plans, specifications and applicable codes called for the use of non-lead solder. In the meantime, Hillsborough negotiated directly with the contractors and their sureties as to the water leaks and improper installation of the ceiling fans. Paul E. Griggs (Griggs) represented Hillsborough during the filing of this complaint.
DiNatale declared bankruptcy. As a result, in February 1993, Hillsborough amended the complaint to add International Fidelity Insurance Company (International Fidelity), the surety company for the plumbing contractor, as a defendant. The complaint was also amended to include Faridy, the architect, and Wagner, the construction manager, as defendants based upon their alleged failure to supervise the plumber's work.
In December 1993, International Fidelity filed a motion for summary judgment based upon Hillsborough's failure to commence suit within two years from the date DiNatale completed the work pursuant to a provision in the performance bond. During the pendency of International Fidelity's motion, Griggs resigned as Hillsborough's counsel. James W. Broscious (Broscious) was subsequently retained to prosecute the lead-solder claim. International Fidelity was granted summary judgment on March 18, 1994. On May 13, 1994, Hillsborough disposed of the lead-solder lawsuit with Faridy and Wagner through voluntary stipulations of dismissal with prejudice. The entire lead-solder case was dismissed without the payment of any consideration by any of the defendants.
Subsequently, on August 25, 1995, Hillsborough, through the law firm of Fogarty & Hara, filed a second complaint against Faridy, Wagner, DiNatale, and Middle State, the consulting engineer for the architects, and others, alleging negligence in design, installation and specifications of ceiling fans. Faridy and Wagner moved to dismiss the complaint against them under the entire controversy doctrine.
On December 1, 1995, the motion judge granted summary judgment, dismissing with prejudice the complaint against Faridy and Wagner relying on the bar of the entire controversy doctrine. Hillsborough filed a motion for leave to file an interlocutory appeal which was denied by this court on March 28, 1996.
Hillsborough observed water entering the building through the roof and/or window in 1990 immediately after occupancy had been permitted. In January 1996, after ascertaining through an independent expert that water leaks may be the result of design deficiencies, Hillsborough amended the second complaint to add roof design defect claims against Faridy, Wagner, and Middle State. In addition, Hillsborough added Biehn, the general contractor, and Donnelly, the roofing subcontractor, as defendants. Alleging legal malpractice, the amended complaint also named Hillsborough's former attorneys, Griggs and Broscious as defendants for their *860 failure to join all claims and parties in the initial suit.
Middle State, Biehn and Donnelly moved to dismiss the claims in the amended complaint under the party-joinder component of the entire controversy doctrine because they were not named as defendants in the lead-solder litigation. Similarly, Faridy and Wagner moved to dismiss the amended complaint, arguing that the new roof claims were barred because they should have been joined in the prior litigation. By letter opinion dated August 16, 1996, the motion judge dismissed the complaint as against defendants Faridy, Wagner, Middle State, Biehn and Donnelly based upon the entire controversy doctrine, leaving only the legal malpractice claims against Broscious and Griggs.
On October 19, 1998, Broscious filed a motion for reconsideration. Hillsborough and Griggs joined in the motion filed by Broscious. On November 20, 1998, the motion judge granted in part and denied in part the motion. The judge ordered that the complaint be reinstated nunc pro tunc as to defendants Middle State, Biehn and Donnelly, who were not named as defendants in the lead-solder litigation. The complaint against defendants Faridy and Wagner was not reinstated.

II.
On appeal, Broscious argues that the entire controversy doctrine was incorrectly applied to bar the design defect claims against the architect and construction manager. Broscious contends that the exact cause of the water infiltration was unknown at the time of the lead-solder litigation. He further asserts that the claim against the architect and construction manager arising out of the plumber's inappropriate use of lead solder was for their alleged negligence in failing to supervise the plumber's work and was therefore unrelated to the design defect claims pertaining to the second suit.
Broscious first argues that the exact cause of the problems associated with the ceiling fans and water infiltration were unknown at the time of the first litigation. Hillsborough initially believed that the water infiltration and ceiling fan problems were solely the result of construction defects. According to Broscious, the only source suggesting at the time of the first litigation that the roof was defectively designed, thereby attributing liability to the architect, came from the contractors responsible for the construction of the school "who obviously had a self-serving interest in making this allegation." Broscious argues that Hillsborough did not become aware of the design defects until January 1996, when an independent expert first ascertained that the roof leaks may be the result of design deficiencies.
Hillsborough was aware during the pendency of the lead-solder litigation that the ceiling fans were improperly installed and that water had been leaking through the roof and/or walls. A January 7, 1998 mediation statement submitted on behalf of Hillsborough revealed that in April and May 1993, respectively, counsel for Hillsborough received notice of a violation of the building code and was subsequently directed to remove the ceiling fans installed at the school. Counsel recounted the history of the roof claims, observing that the roof at the school leaked shortly after the school opened in September 1990. Moreover, the mediation statement noted that a dispute arose between one of the contractors, its subcontractor, the architect and the construction manager concerning whether the cause of the roof leak was a design defect or a construction problem.
The entire controversy doctrine does not apply to bar component claims that are either unknown, unarisen or unaccrued at the time of the original action. Circle Chevrolet v. Giordano Halleran & Ciesla, 142 N.J. 280, 294, 662 A.2d 509 (1995). Hillsborough had knowledge that there were other problems with the school, which was obtained through reliable sources; namely, Hillsborough's direct observations (water leaks) or notice from the town of building code violations (ceiling fans) prior to the settlement of the lead-solder litigation. The fact that Hillsborough was unaware of the exact cause, i.e., construction or design defects, of the problems should not alter the result.

*861 III.

Broscious further contends that the entire controversy does not bar the subsequent claims because no aspect of these claims, involving water infiltration or ceiling fan installation, was ever addressed or litigated in the initial proceeding. Broscious relies on Gelber v. Zito Partnership, 147 N.J. 561, 688 A.2d 1044 (1997), to support his position. The motion judge concluded, without elaboration, that Gelber was distinguishable and an insufficient basis for reconsideration of its decision. We disagree.
Our Supreme Court has effected major changes in the direction and application of the entire controversy doctrine. Olds v. Donnelly, 150 N.J. 424, 431-35, 696 A.2d 633 (1997) (outlining the evolution of the entire controversy doctrine). The mandatory party-joinder component of the doctrine has been eliminated by rule "except in special situations involving both inexcusable conduct... and substantial prejudice to the non-party resulting from omission from the suit." Pressler, Current N.J. Court Rules, comment 1 on R. 4:30A (1999).
Although the explicit wording of the rule governing the mandatory joinder of claims has remained unchanged,[1] the Court continues to emphasize that equitable considerations should ease the path upon which the doctrinal bar travels. See, e.g., Joel v. Morrocco, 147 N.J. 546, 555, 688 A.2d 1036 (1997) (recognizing that "equitable considerations can relax mandatory-joinder requirements when joinder would be unfair"). Preclusion should be a remedy of last resort. Olds, supra, 150 N.J. at 446-47, 696 A.2d 633. As the Court recently noted: "[t]he twin pillars of the entire controversy doctrine are fairness to the parties and fairness to the system of judicial administration." Gelber, supra, 147 N.J. at 565, 688 A.2d 1044 (citing Joel v. Morrocco, 147 N.J. 546, 555, 688 A.2d 1036 (1997)). In considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant "had a fair and reasonable opportunity to have fully litigated that claim in the original action." Ibid. The entire controversy doctrine attempts to further these objectives by requiring that, whenever possible, "the adjudication of a legal controversy should occur in one litigation in only one court." Cogdell v. Hospital Ctr., 116 N.J. 7, 15, 560 A.2d 1169 (1989).
The doctrine has been applied to bar claims involving the same commonality of facts in cases involving piece-meal litigation where parties for strategic reasons have withheld claims concerning the underlying action, seeking two bites at the apple. See, e.g., DiTrolio v. Antiles, 142 N.J. 253, 269, 662 A.2d 494 (1995) (holding that claims against doctors in subsequent action were barred where evidence in first suit formed the basis of second action); Cogdell, supra, 116 N.J. at 26, 560 A.2d 1169 (concluding that claimants' failure to join hospital and staff in initial suit against doctors in a negligence action, for causing the same injuries to infant during delivery, precluded subsequent action against hospital and staff). The similarity of claims may not always be obvious. Thus, "[i]n each application of the doctrine, a careful analysis of the relevant factors must be made." Joel, supra, 147 N.J. at 554, 688 A.2d 1036.
More recently, in Gelber v. Zito Partnership, supra, the Court proposed that claims, which are separate and discrete from those dealt with in the initial proceeding, should not be barred by the entire controversy doctrine in a subsequent suit. Gelber, supra, 147 N.J. at 568-69, 688 A.2d 1044. Gelber involved two separate legal proceedings against two parties. The first proceeding involved a lawsuit brought in 1991 by the plaintiff-homeowner against a former architectural firm, the Zito Partnership, for professional malpractice. Plaintiff certified pursuant to R. 4:5-1(b)(2), that there were no other matters in controversy. During a subsequent deposition of plaintiff's expert, the architect learned that the plaintiff had brought an arbitration proceeding against the contractor. The contractor refused to *862 pay the arbitration award to plaintiff, contending that the architect was responsible for some of the damages. Id. at 564, 688 A.2d 1044. After learning of these arbitration proceedings, the architect moved to dismiss the complaint, alleging that the "homeowner was attempting to `double dip' in violation of the entire controversy doctrine." Id. at 564, 688 A.2d 1044. The architect alleged that the plaintiff had violated R. 4:5-1(b)(2) in failing to notify the parties and the court of the arbitration proceeding against the contractor. Ibid.
The plaintiff-homeowner argued that the entire controversy doctrine did not preclude the claims against the architect because the design claims against the architect were separate and distinct from the construction defect claims asserted against the general contractor in the arbitration proceeding. Id. at 567, 688 A.2d 1044.
The Court refused to dismiss the claims against the architect, stating that "[w]e cannot agree that an arbitration with a contractor over instances of faulty construction always requires dismissal of an homeowner's suit that alleges major design deficiencies against an architect." Id. at 568, 688 A.2d 1044. "Dismissal is only appropriate when the claims in the action against the architect are derived from facts also forming the basis for the suit against the contractor." Ibid. The Court remanded the case to the trial court for a determination of the extent to which the homeowner's claims against the architect implicate the facts and claims involving both the contractor and the architect. Ibid.
Here, the only issue presented in the lead-solder litigation involved Hillsborough's claim for damages associated with the plumber's use of lead solder in the drinking water when the plans, specifications and applicable codes prescribed use of non-lead solder. Allegations of design defects were not implicated in that complaint at all. The only allegation against Faridy and Wagner was their alleged negligence in failing to supervise the plumbers during their installation of piping while using lead solder. Thus, the claims are clearly separate and discrete. There would be no replication of proofs. The trial court would not be retracing ground that had already been covered. Judicial economy will not, therefore, be sacrificed. The fact that the various claims may have arisen out of the same construction job should not be the determinative factor.
The policies underlying application of the entire controversy doctrine would not be promoted by barring the claims under the circumstances presented here. The claims against Faridy, the architect, and Wagner, the construction manager, were never adjudicated on the merits. Hillsborough dismissed its claim for negligent supervision of the plumber against Faridy and Wagner. That disposition resulted in a voluntary stipulation of dismissal with prejudice between Hillsborough and defendants. However, neither Faridy nor Wagner provided payment or any other form of consideration for the dismissal. Hillsborough did not exchange any form of release running in favor of either Faridy or Wagner. Defendants could receive a "windfall" by being permitted to escape any potential liability for any design defects because Hillsborough dismissed the claim against them for negligent supervision. The entire controversy doctrine should not be deployed under the circumstances here to bar Hillsborough's claims, which were never adjudicated on the merits.
In addition, the unfairness to Hillsborough and to Broscious in not being permitted to assert its meritorious claims and cross-claims against Faridy and Wagner far outweighs any prejudice to the parties asserting the preclusion. Faridy argues that it would be prejudiced if this court permitted the design defect suit to continue against it for the following reasons:
1. [Faridy] had not had an opportunity to examine the changes in the condition of the roof in question during the eight plus years that have passed since the roof leaks were first noted.
2. [Faridy] cannot now document what the as-built condition of the roof was in 1990.
3. Because [Faridy] has not been a party to an action involving roof claims from 1992 through the present, it has been unable *863 to document and examine the condition of a roof which no longer exists due to the passage of time and the neglect of Hillsborough....
4. [Faridy] has lost the ability to participate in the negotiation of a global settlement of all construction related claims due to the disposition of the 1992 action. The loss of parties due to bankruptcy, the passage of time and the complication of this matter with legal malpractice claims and claims for additional pre-judgment interest has deprived [Faridy] of the potential for participating in a "clean" resolution of this matter.
Any "unfairness" to Faridy in permitting the claims is questionable. Faridy was the architect in charge of designing the school, and the school was constructed in accordance with those designs. There is no evidence that any modifications to the roof have occurred between 1990 and present. The record does not indicate that "global settlement" negotiations have commenced. Moreover, Hillsborough, even in the absence of any earlier filing, could have waited six years before initiating an action against Faridy and Wagner and still have been within the statute of limitations period. Thus, there can be no legal prejudice to Faridy for not examining the roof because Hillsborough could have legally waited up to six years to commence its lawsuit.
Faridy and Wagner argue that Broscious is barred by the Joint Tortfeasors Act, N.J.S.A. 2A:15-5.1, from asserting cross-claims against them. In addition, they contend that Broscious has no right to seek contribution or indemnity from them because they are settling tortfeasors. Not so. While Faridy and Wagner entered into a stipulation of dismissal with Hillsborough in the lead-solder litigation, and only as to that claim, neither Faridy nor Wagner entered into a settlement with Hillsborough concerning the design defect claims at issue here. Faridy and Wagner are not "settling joint tortfeasors" with respect to the present claims. N.J.S.A. 2A:15-5.1 presents no bar.
Reversed and remanded for reinstatement of the amended complaint against defendants, Faridy Thorne Frayta and Wagner-Hohns-Inglis, Inc.
NOTES
[1] R. 4:30A provides that "[n]on joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...."