835 A.2d 1257

IRISH PUB, RICHARD BURKE AND CATHY BURKE,
PLAINTIFFS–APPELLANTS, v. RACHELLE
STOVER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 22, 2003—Decided November 26, 2003.

Before Judges KING, LISA and KIMMELMAN.

*Edwin J. Jacobs, Jr.* argued the cause for appellants (*Jacobs & Barbone,* attorneys; *Mr. Jacobs,* of counsel; *Arthur J. Murray,* on the brief).

*Richard F. DeLucry* argued the cause for respondent (*Sandson & DeLucry,* attorneys; *Mr. DeLucry,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

This appeal raises a novel issue: Does the entire controversy doctrine bar a post-judgment motion to enforce an order, where the party seeking enforcement has brought a prior post-judgment motion to enforce some other aspect of the same order, and where the party seeking enforcement knew about both alleged violations of the order when the first motion was filed? The motion judge concluded the doctrine applied and granted summary judgment dismissing appellants' motion for relief in aid of litigant's rights. We reverse.

The parties are adjoining commercial landowners in Atlantic City. Plaintiffs are the Irish Pub and its owners, Richard and Cathy Burke (Burke). The Irish Pub is located on St. James Place. Defendant is Rachelle Stover, who maintains The Brunswick Hotel (The Brunswick), a rooming house also on St. James Place. The Brunswick is located behind a parking lot maintained by Burke.

Since 1994, various disputes have arisen between the parties, with each side making allegations of business and property interference by the other. These allegations, not relevant here, led to a lawsuit, commenced in 1994, and resolved by a consent order in

1996. In 1998, continuing disputes prompted both parties to move for enforcement of provisions in the consent order. *R.* 1:10–3. The parties again resolved the matter, resulting in the entry of a revised consent order in 1999. Both orders provided that the court would retain jurisdiction for enforcement.

On April 11, 2001, Burke filed a motion in aid of litigant's rights claiming Stover violated a provision in the consent order, which prohibited both parties from making complaints to any governmental agency without first notifying the other party. The parties amicably resolved this dispute and in August 2001, Burke's attorney advised the court the motion was withdrawn.

On October 31, 2001, Burke filed another motion, seeking redress for the alleged violation of a provision in the current order pertaining to a sign located at the rear of The Brunswick. The order required Stover to change within twenty days the language on the sign to read "Enter on" St. James Place and eliminate the words "Come to." The order provided for attorney's fees and a $150 per day fine for a violation of the sign provision.

Burke moved for and was granted post-judgment discovery under *Rule* 4:24–3. Stover moved for summary judgment to dismiss Burke's motion for relief in aid of litigant's rights, asserting various grounds, including waiver or satisfaction and accord (because of the terms of the August 2001 settlement), laches, equitable estoppel and the entire controversy doctrine. The motion judge granted Stover's motion, dismissing Burke's motion to enforce the sign provision. The judge based his decision solely on the entire controversy doctrine, stating "I think that the spirit of the entire controversy doctrine is such that parties who have claims against each other are required to bring them in one proceeding. And, that they can't separate them out and decide to bring one claim and another claim at another time."

The judge recognized there were no cases applying the entire controversy doctrine to post-judgment proceedings. He said:

> Here it's clear that Mrs. Burke knew that there was a violation of the agreement with respect to the sign 20 days after the agreement was entered into. I suspect

that [Burke's counsel] is probably right that maybe she didn't think it was such a big deal ... at that point. And, they had just finished litigation and ... they had gone through years of this. I'll call it silliness, but they've gone through years of this silliness and maybe she just didn't want to start up again.

But certainly she knew in April of 2001 that the sign issue was out there. And, I disagree with the ... proposition that knowing that that issue was there that she has the right to say well I'm not going to assert that one now. There's another one that I want to do first and then I'll do the sign issue later. I think that that clearly violates the ... spirit of the entire controversy doctrine. And, I don't think that parties ought to be able to do that. That is[,] prolong litigation, pick and choose when you want to bring them.

And, I think that that holds true for post judgment issues as well as prejudgment issues.

We disagree.

█ *Rule* 4:30A    provides:

Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R.* 4:64–5 (foreclosure actions) and *R.* 4:67–4(a) (leave required for counterclaims or cross-claims in summary actions).

In this case, the question is whether the entire controversy doctrine required Burke to seek enforcement of the alleged sign violation at the time of the April 2001 motion. Stated differently, the question is whether Burke's decision to separately seek this relief constituted non-joinder of a "claim" for *Rule* 4:30A purposes.

The Supreme Court recently discussed the entire controversy doctrine in *K–Land Corp. # 28 v. Landis Sewerage Auth.*, 173 *N.J.* 59, 800 *A.*2d 861 (2002). K–Land sought reimbursement from the Landis Sewerage Authority for money spent to construct a sewer system force main the Authority would operate for the benefit of K–Land and other property owners. The trial judge held the entire controversy doctrine barred K–Land's suit, because K–Land should have brought the claims in a declaratory judgment action it instituted twenty months earlier. We affirmed. 173 *N.J.* at 60–69, 800 *A.*2d 861.

The Supreme Court reversed. The Court quoted Judge Pressler's comment to *R.* 4:30A:

The entire controversy doctrine, an equitable preclusionary doctrine whose purposes are to encourage comprehensive and conclusive litigation determinations, to

avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency, was originally conceived of as a claim-joinder mandate, requiring all parties in an action to raise in that action all transactionally related claims each had against any other whether assertible by complaint, counterclaim, or cross-claim.... Although the court rules had not initially contained any provision expressly referring to the entire controversy doctrine, *R.* 4:27–1(b) was added to the rule governing joinder of claims effective September 1979 to provide for mandatory joinder of claims under the doctrine, which, however, was undefined, it having been then and remains still the Supreme Court's view that development of the substantive content of the doctrine is best left to case law.

. . . .

The rule as to claim joinder continues to require, as a general matter, that all aspects of the controversy between those who are parties to the litigation be included in a single action.

. . . .

*[T]he equitable nature of the doctrine[ ] bar[s] its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency.*

. . . .

*Nor does the doctrine apply to bar component claims either unknown, unarisen or unaccrued at the time of the original action.*

> [*K–Land, supra,* 173 *N.J.* at 70, 800 *A.2d* 861 (quoting Pressler, *Current N.J. Court Rules,* Comments 1 and 2 on *R.* 4:30A (2002)).]

The Court referred to the elucidation of the doctrine in *Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C.,* 321 *N.J.Super.* 275, 728 *A.*2d 857 (App.Div.1999), where we acknowledged the doctrine's equitable origins:

Although the explicit wording of the rule governing the mandatory joinder of claims has remained unchanged, the Court continues to emphasize that equitable considerations should ease the path upon which the doctrinal bar travels. *See, e.g., Joel v. Morrocco,* 147 *N.J.* 546, 555, 688 *A.*2d 1036 (1997) (recognizing that "equitable considerations can relax mandatory-joinder requirements when joinder would be unfair"). Preclusion should be a remedy of last resort. *Olds [v.Donnelly], supra,* 150 *N.J.* [424] at 446–47, 696 *A.*2d 633 [1997]. As the Court recently noted: "[t]he twin pillars of the entire controversy doctrine are fairness to the parties and fairness to the system of judicial administration." *Gelber [v. Zito Partnership], supra,* 147 *N.J.* [561] at 565, 688 *A.*2d 1044 [1997] (citing *Joel v. Morrocco,* 147 *N.J.* 546, 555, 688 *A.*2d 1036 (1997)). In considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant "had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Ibid.*

> [*K–Land, supra,* 173 *N.J.* at 72–73, 800 *A.*2d 861 (quoting *Hillsborough,* 321 *N.J.Super.* at 284, 728 *A.*2d 857 (footnote omitted)).]

Applying these principles to *K–Land,* the Court reversed because "the Appellate Division did not focus sufficiently on considerations of fairness." *Id.* at 74, 800 *A.*2d 861. "This record simply does not support the conclusion that when the declaratory judgment suit was filed negotiations between K–Land and [the Authority] were so adverse that litigation was K–Land's only recourse." 173 *N.J.* at 75, 800 *A.*2d 861.

In the case before us, the April 2001 Motion and the October 2001 motion were not "claims" in lawsuits Burke filed against Stover. They were motions in aid of litigant's rights under *R.* 1:10–3. The "claims" to which *R.* 4:30A speaks were contained in the 1994 complaint that gave rise to the 1996 consent order and the 1999 revised consent order.

Enforcement of orders within ongoing litigation is a fluid situation. Court orders are executory in nature. The ability and responsibility of a court to enforce its own orders should not be precluded by a mechanistic application of a claim preclusion doctrine. In this context there is no violation of the principle that all related claims should be resolved in a single litigation. This is a single litigation, in which the parties have expressly agreed in their consent orders to vest the court with continuing jurisdiction to enforce the orders.

Concerns of party fairness are not necessarily offended by allowing a party to seek enforcement of different provisions in an order at different times. A party may have many reasons to forego enforcement action regarding a particular issue. For example, the party may not want to incur the expense or waste the court's time, or the party may be willing "to live with" the problem or may be hopeful that the problem will be resolved. Later, after seeking enforcement for a more significant violation of the order, the party should not be automatically precluded from raising the earlier issue if it continues to fester or worsens. This result would advance neither fairness nor judicial economy and efficiency.

■ We hold that the entire controversy doctrine does not apply to post-judgment motions to enforce litigant's rights. On remand, Stover may again assert waiver, accord and satisfaction, laches, and estoppel, or any other basis upon which Burke's motion might be subject to preclusion. We do not suggest that our holding immunizes a party from challenge to bringing serial enforcement motions. The result will in each case be fact-sensitive. We merely hold there is no automatic preclusion.

Reversed and remanded. We do not retain jurisdiction.