**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3660-21
A-0354-22

JOHN FENDT, ALAN WOZNIAK,
MONROE TOWNSHIP
DEVELOPMENT COMPANY, LLC,
and PCH ASSOCIATES, LLC,

     Plaintiffs-Appellants,

v.

NICHOLAS MENAS, ESQ.,
COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM,
PA, JOSEPH ROCCO, ESQ.,
PEPPER HAMILTON, LLC, FOX
ROTHSCHILD, LLP, JOHN L.
SLIMM, ESQ., JEREMY J.
ZACHARIAS, ESQ., and
MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN,

     Defendants-Respondents,

and

TNM DEVELOPMENT
CONSULTING, LLC, ERIC FORD,
PULTE HOMES, KDL REALTY
MANAGEMENT, LLC, THERESA

MENAS, JAMES WALLS,
MICHAEL BORINI, 322 WEST
ASSOCIATES, LLC, TIMOTHY
J. BLOH, ESQ, and CHRISTOPHER
C. FALLON, III, ESQ.,

    Defendants.

JOHN FENDT, ALAN WOZNIAK,
MONROE TOWNSHIP
DEVELOPMENT
COMPANY, LLC, and PCH
ASSOCIATES, LLC,

    Plaintiffs-Appellants,

v.

NICHOLAS MENAS, ESQ.,
COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM,
PA, JOSEPH ROCCO, ESQ., and
PEPPER HAMILTON, LLP,

    Defendants-Respondents,

and

MICHAEL BORINI, THERESA
MENAS, PULTE HOMES, KDL
REALTY MANAGEMENT, LLC,
ERIC FORD, 322 WEST
ASSOCIATES, LLC, TNM
DEVELOPMENT CONSULTING,
LLC and JAMES WALLS,

    Defendants.

Argued November 6, 2024 – Decided January 7, 2025

Before Judges Currier, Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket Nos. L-0819-20 and L-3782-15.

Giovanni De Pierro argued the cause for appellants (De Pierro Radding, LLC, attorneys; Giovanni De Pierro, Alberico De Pierro, and Davide De Pierro, on the briefs).

John L. Slimm argued the cause for respondents Nicholas Menas, Esq. and Cooper Levenson April Niedelman & Wagenheim (Marshall Dennehey, attorneys; John L. Slimm, on the brief).

Jonathan M. Preziosi argued the cause for respondents Joseph Rocco, Esq. and Pepper Hamilton, LLP (Lewis Brisbois Bisgaard & Smith, LLP, attorneys; Jonathan M. Preziosi, of counsel and on the brief).

Walter F. Kawalec, III argued the cause for respondents John L. Slimm, Esq., Jeremy J. Zacharias, Esq., and Marshall Dennehey Warner Coleman & Goggin, P.C. (Marshall Dennehey Warner Coleman & Goggin, attorneys; Lawrence B. Berg and Walter F. Kawalec, III, on the brief).

PER CURIAM

These appeals, heard back-to-back, arise out of an alleged fraudulent real estate scheme. We begin with a review of the orders under A-0354-22.

3

In their initial complaint (the 2015 complaint), plaintiffs alleged legal negligence claims against defendants, Nicholas Menas, Esq., and Cooper, Levenson, April, Niedelman & Wagenheim, P.A. After plaintiffs did not provide an affidavit of merit (AOM) regarding the claims, the court dismissed the complaint against those defendants. In a subsequent motion to vacate the order, plaintiffs alleged the common knowledge exception applied to alleviate the need for an AOM. The trial court disagreed and denied the motion to vacate.

Plaintiffs' 2015 complaint also included tort claims against Menas and Cooper Levenson as it did against all defendants, alleging acts of tortious interference, fraud, conversion, and conspiracy to commit tortious interference, fraud and conversion. In its motion to vacate the dismissal order, plaintiffs contended the tort claims should not be dismissed because they did not need an AOM to support those causes of action. The trial court found the tort claims were based on the same factual predicate as the legal malpractice claims and therefore, without an AOM, they could not be sustained.

After a careful review, we affirm the portion of the order dismissing the legal malpractice claims against Menas and Cooper Levenson in the 2015 complaint, but vacate the order as to the dismissal of the tortious claims and remand for reinstatement of those counts.

4

As the discovery end date approached, plaintiffs moved for leave to amend the complaint a fourth time, seeking to assert new claims against Menas and Cooper Levenson based upon newly discovered facts. The court denied the motion. Because of our ruling regarding the tortious claims, we vacate the portion of the order denying the amendment of the tort counts.

The court also granted defendants Joseph Rocco, Esq. and Pepper Hamilton LLP summary judgment. We affirm.

We turn to the orders on appeal under A-3660-21. After the court denied plaintiffs leave to amend their complaint, they filed a new complaint (2020 complaint) against the same defendants and added new defendants and new claims. Menas and Cooper Levenson, and defendants Marshall Dennehey Warner Coleman & Goggin, John L. Slimm, Esq., and Jeremy J. Zacharias, Esq. (Marshall Dennehey defendants) moved to dismiss the complaint on grounds of res judicata and the entire controversy doctrine. The court granted the motion. We affirm.

The court also granted Rocco and Pepper Hamilton summary judgment. We affirm that order as well. Thereafter, plaintiffs settled their claims with the remaining defendants in the 2015 and 2020 complaints.

5

The Marshall Dennehey defendants and Menas and Cooper Levenson filed separate motions for sanctions pursuant to Rule 1:4-8(b) and N.J.S.A. 2A:15-59.1 in the 2020 case. The court granted the motions. On June 30, 2022, the court granted plaintiffs' cross-motion to reconsider its prior order as to the Marshall Dennehey defendants and declined to award any counsel fees to those defendants because they were self-represented. That same day, the court awarded Menas and Cooper Levenson counsel fees of $23,765.50. Because we conclude the court erroneously dismissed the non-legal malpractice tortious counts against Menas and Cooper Levenson, we reverse the order granting counsel fees.

I.

Factual Background

In March and April 2006, plaintiff John Fendt, an engineer, contractor and real estate developer, met with Menas, an attorney employed by Cooper Levenson, and defendant Eric Ford, a representative of defendant Pulte Homes and the managing member of defendant KDL Realty Management, LLC (KDL). According to Fendt, Menas and Ford advised Fendt of two real estate opportunities involving: (1) several adjacent properties in Monroe Township

6

(the Assemblage), including a parcel owned by the McTague family; and (2) a separate property also within the Township known as Duncan Farms.

Menas and Ford told Fendt that, once rezoned, approximately four hundred market rate townhomes could be built on the Assemblage. They further stated that, once Duncan Farms was rezoned, it could be developed as off-site affordable housing in order to satisfy the affordable housing obligation associated with the Assemblage. Menas and Ford offered Fendt the opportunity to buy Duncan Farms and the Assemblage, obtain all necessary approvals, improve the properties for development and then sell the Assemblage to Pulte Homes, and Duncan Farms to an experienced affordable housing developer.

Fendt decided to purchase each of the parcels comprising the Assemblage and Duncan Farms. He retained Menas and Cooper Levenson as counsel for the real estate transactions.

To accomplish Fendt's purchase and development of the properties, Menas formed plaintiff Monroe Township Development Company, LLC (MTDC) listing himself as the registered agent, and Cooper Levenson's office as the registered office. Plaintiff Alan Wozniak later became the managing member of MTDC.

Menas also formed plaintiff PCH Associates LLC (PCHA), with the same registered agent and office. In 2008, PCHA filed a certificate of change in which Rocco and Pepper Hamilton became the registered agent and office of PCHA. Around that same time, Menas's cousin, William Russo, opened a bank account in the name of PCHA.

Fendt alleged that, without his knowledge, Menas and Ford directed defendant James Walls, a member of PCHA, to execute an agreement of sale, on behalf of PCHA, to purchase the McTague parcel. Under this agreement, PCHA purchased the property for $3,300,000 (200 market units, $16,500 per unit), with a $2,000 deposit.

Thereafter, Fendt signed an "Assignment and Assumption of Agreement" for the McTague-PCHA Agreement of Sale, on behalf of MTDC, which was prepared by Rocco, PCHA's counsel. Under this agreement, Fendt purchased the McTague parcel for $4,700,000 (200 market units, $23,500 per unit), and made a deposit of approximately $500,000. Plaintiffs alleged, because of the secret "flip," they paid an additional $1,400,000 for the McTague property than if they had negotiated directly with McTague.

Some of the monies paid by plaintiffs were initially deposited into a Cooper Levenson attorney trust account for subsequent transfer to PCHA, while

8

other checks were made directly payable to PCHA. According to plaintiffs, in April 2009, Wozniak also personally delivered a $250,000 check to Russo, whom plaintiffs understood to be a member of PCHA, in Rocco's presence, at the Pepper Hamilton office. Russo later claimed that someone impersonated him at this meeting. Nonetheless, plaintiffs acknowledged that this check was deposited in the PCHA account.

Fendt testified during his deposition that he never met Rocco, nor did Rocco ever give him any legal advice, or provide him with any information about the McTague property or Pulte Homes. Wozniak testified that, while he met Rocco at the April 2009 meeting, Rocco never gave him any legal advice about the deal. Instead, Wozniak stated he relied on Ford in pursuing the deal.

According to plaintiffs, Russo transferred some of the monies in the PCHA account to defendant TNM Developing Consulting, LLC (TNM), an entity for which defendant Theresa Menas (Menas's wife) was an authorized signatory, and to KDL, of which defendant Michael Borini was a member along with Ford.[1] Borini was also the managing member of defendant 322 West Associates LLC (322 West).

---

[1] Russo stated he did not engage in most of the PCHA bank activities attributed to him; rather, it was Menas who handled the banking transactions.

Plaintiffs alleged a portion of the monies transferred to TNM was later transferred to Menas's and Theresa's personal bank account. Other monies transferred to TNM and KDL were later distributed to Walls, Brestle, and 322 West. The remaining monies in the KDL account were utilized by Ford and Borini. Plaintiffs did not allege that any monies were left in the TNM account or that Rocco or Pepper Hamilton wrongfully retained any of plaintiffs' money. In total, plaintiffs claimed that defendants divided approximately $2,000,000 among themselves.

II.

The 2015 Complaint

In June 2015, plaintiffs filed a complaint against Menas, Cooper Levenson, Ford, Pulte Homes, KDL, Borini, 322 West, Walls, Rocco, Pepper Hamilton, Theresa, and TNM asserting claims for: (1) tortious interference (count four), fraud (count five), conversion (count six) and conspiracy to commit tortious interference, fraud, and conversion (count seven) against all defendants; (2) legal malpractice (counts one through three) against Menas and Cooper Levenson; and (3) legal malpractice (counts eight and nine) against Rocco and Pepper Hamilton.

Several months later, Menas and Cooper Levenson moved to dismiss the complaint against them for failure to serve an AOM. Plaintiffs did not oppose the motion. On January 19, 2016, the court granted the motion and dismissed all counts against Menas and Cooper Levenson.

First Motion to Vacate

In September 2016, plaintiffs moved under Rule 4:50-1 to vacate the order dismissing the counts against Menas and Cooper Levenson, arguing that the legal malpractice claims (counts one through three) against these defendants fell within the common knowledge exception to the AOM statute, and that the non-legal malpractice claims did not require an AOM.

The court denied plaintiffs' motion on November 10, 2016. Preliminarily, the judge found that although plaintiffs had characterized their motion as seeking relief under Rule 4:50-1, they actually sought reconsideration of the merits of the court's decision under Rule 4:49-2. Nevertheless, the court stated, under either rule, it was denying the motion because an AOM was required to support the legal malpractice claims.

The court found the common knowledge exception did not apply to alleviate the need for an AOM regarding the legal malpractice claims, explaining:

[I]n the first count, plaintiffs identify three ways in which defendants allegedly breached their duty to . . . plaintiffs, and failed to meet the standard of care required by those engaged in the legal profession.

. . . .

[In s]ubparagraph A, plaintiffs assert that defendants failed to timely advise plaintiffs in advance of being retained as legal counsel of their past or concurrent representation of other parties.

So, that would appear to the court to clearly relate to an attorney's obligation under the rules of professional conduct to provide certain information to a client.

What information has to be provided, how that has to be provided, when that has to be provided, respectfully, all of that is beyond the . . . ken . . . [or] the common knowledge of a juror.

[In s]ubparagraph B . . . , plaintiffs assert that defendants failed to timely advise plaintiffs of certain information regarding the underlying transactions.

Again, what information an attorney should have and when that information should have been provided does not fall within the common knowledge exception.

Similarly, [s]ubparagraphs C, and D, and E, again, talk about, or relate to plaintiffs['] assertion that defendants, again, failed to advise plaintiffs as to certain facts relating to the underlying transactions, failed to advise plaintiffs as to how those transactions were structured, negotiated, and drafted, failed to advise them as to whether they represented others in those transactions, and failed to advise them as to

12

whether the defendants themselves had an interest in those transactions.

Again, all of those assertions fall outside of the common knowledge exception.

And none of the cases cited by plaintiff under the common knowledge exception come anywhere close to the complexity of the issues [presented here] that would have to be put before a fact finder.

. . . .

In the . . . second count, plaintiffs don't really provide any specifics as to malpractice.

In the third count, they . . . assert that defendants breached a legal services agreement, and . . . failed to meet the standard of care when, again, they failed to provide certain advice to the plaintiffs . . . [a]nd failed to provide them with information.

So, again, for the same reasons, the court finds that those do not fall within the common knowledge exception.

. . . .

It's not a situation where a deadline was missed. It's not a situation where there was a failure to file a motion timely. It's not a case where there was a failure to relay a settlement offer, for example. It's not simply a failure to produce an expert witness in a trial. It's . . . not that simple.

And accordingly, the court rejects that argument and maintains its decision to dismiss with prejudice

A-3660-21

[c]ounts 1 through 3 of the complaint, those counts specifically identified as legal malpractice.

The court then turned to the non-legal malpractice claims asserted against Menas and Cooper Levenson. After reviewing the allegations in counts four through seven, the court found it clear that the "factual predicates for the legal malpractice claims and the non-legal malpractice claims" were the same. The court explained:

> Plaintiffs do not identify either in their pleading or in their briefs in support of this motion a . . . factual predicate that applies only to the purported non-malpractice claims and not to the legal malpractice claims.
>
> . . . .
>
> And again, as I've set forth . . . it's effectively the same wrongful acts or inactions that are alleged in connection with the legal malpractice claims for which the court has found an expert would be necessary.

Plaintiffs' subsequent motion for reconsideration was denied.

By mid-2018, plaintiffs had amended their complaint for a third time to, among other things, add TNM as a defendant and to assert a RICO[2] violation

---

[2] New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2.

14

claim, a claim of conspiracy to violate RICO, and a claim of aiding and abetting against all defendants.

Motion to Amend Complaint

In December 2019, plaintiffs moved for leave to amend the complaint a fourth time, seeking to assert "new" claims against Menas and Cooper Levenson based upon "newly" discovered facts, i.e., that Menas, not his father, owned TNM, the entity through which fraudulently obtained monies were transferred into the personal bank account of Menas and Theresa, and that PCHA was a sham entity. At that time, the discovery end date was December 30, and a trial date was scheduled for March 23, 2020.

The proposed fourth amended complaint: (1) added Menas as a defendant to the existing claims of fraud, tortious interference, conversion, violation of RICO, conspiracy to violate RICO, conspiracy to commit fraud, tortious interference, and conversion, and aiding and abetting (counts one through five, seven and eight); and (2) asserted two "new" claims of legal malpractice against Menas and Cooper Levenson, as well as a claim against Cooper Levenson for "negligent supervision/respondeat superior" in connection with Menas's alleged misdeeds (counts twelve through fourteen).

15

During the oral argument on the motion, the court inquired of plaintiffs' counsel: "Could you not file a separate complaint now that you've discovered this newly-discovered evidence . . . and then bring a complaint? . . . [N]ot in this matter, a complaint . . . against . . . Menas based upon those predicate facts." Counsel responded that he "believe[d] . . . [he] could."

The court denied plaintiffs' motion on January 24, 2020, stating:

> This matter was initiated on June 11[,] . . . 2015. The case is over four years old. There have been 1,624 days of discovery. There have been six discovery extensions. There have been numerous case management orders, including the case management order . . . that provided that all amendments to the complaint be filed by July 30[,] . . . 2019.
>
> The [c]ourt is well aware that discovery in this case has not been easy and that the parties on both sides have had pretty substantial issues in not only obtaining discovery but also in addressing discovery issues, including motions to quash [and] seeking depositions . . . .
>
> . . . .
>
> . . . [T]his would be the fourth amendment to the complaint. There . . . have been numerous motions for . . . reconsideration on both sides . . . . So this case has had a very lengthy procedural history.
>
> And as I have indicated in the past, at some point it must end. At some point this case needs to get to trial. And as counsel for plaintiffs acknowledge[d] during oral argument, there is nothing that would

16

prevent the plaintiff to the extent that there are newly-discovered claims that were not knowable . . . prior to now against parties, counsel's free to file a complaint.

The argument that there is judicial economy is certainly a consideration for the [c]ourt . . . in motions like this. The [c]ourt does not find that judicial economy would be served in this case to allow an amendment of the complaint.

Despite counsel's representation that . . . they would only seek a 90-day extension of discovery and that all that is required is just one more deposition and one more document, . . . [t]he [c]ourt has heard those same representations in the past throughout this case . . . .

. . . .

And so the [c]ourt cannot be guided by that representation that . . . there's a certainty that there only would be another 90-day delay.

An addition of [a] new party entitles that party . . . time to answer, time to file motions, time to conduct its own discovery.

To bring and drag the defendants who have been in this case for four years into that, and now those defendants would now have to engage in discovery and be subject to discovery by these new parties would be highly prejudicial to the defendants in this case.

When I balance that prejudice against these defendants and their interests and their right to have this case . . . expeditiously decided, to have this case expeditiously go to trial, . . . balanced against the interest of the plaintiff in this case, which would not be

> foreclosed from bringing these claims, they would just have to bring it in a different procedural posture, the [c]ourt is not persuaded that allowing an amendment to the complaint . . . at this late stage of the case when we have a trial date looming in March would not be in the interest of justice to the parties in this case at this point.

The judge further noted that plaintiffs were in possession of some of the additional documents which formed the basis for the proposed new claims for four to six months before the motion was filed.

### III.

The 2020 Complaint

In March 2020, plaintiffs filed a complaint under a new docket number against the same defendants listed in the 2015 action, plus new defendants, including the Marshall Dennehey defendants who represented Menas and Cooper Levenson.

The new complaint directly tracked the allegations in plaintiffs' proposed fourth amended complaint in the 2015 action. It asserted claims for fraud; tortious interference; conversion; unjust enrichment; violation of RICO; conspiracy to violate RICO; conspiracy to commit fraud, conversion, unjust enrichment and tortious interference; and aiding and abetting against Menas, Ford and TNM (counts one through eight).

18

The 2020 complaint: (1) reiterated the same claims for legal malpractice and negligent supervision/respondeat superior against Menas and Cooper Levenson set forth in counts twelve through fourteen of the proposed fourth amended complaint in the 2015 action; (2) added three "new" claims for "fraudulent concealment" against all defendants, based on their alleged failure to disclose during discovery in the 2015 action that Menas was the sole member of TNM and that Menas and Ford controlled and operated PCHA as a sham entity; and (3) added legal malpractice and negligent supervision/respondeat superior claims against the new defendants.

Motion to Consolidate

On March 11, plaintiffs moved to consolidate the complaints. At that time, the trial date for the 2015 complaint was in October 2020. During oral argument, plaintiffs' counsel asserted that, in denying the prior motion to amend, the court held plaintiffs were not prejudiced because they "would not lose their right to bring the [new] claims," the new claims were previously "unknown," and that there would be "no claim preclusion."

Counsel also pointed out that when the court denied leave to amend the complaint, it was concerned with a looming trial date and the delay caused by allowing the amended complaint to proceed. However, since that time, the court

had adjourned the trial several times at defense counsels' request and then because of the COVID-19 pandemic.

The court addressed plaintiffs' counsel's comments, stating:

> I appreciate [plaintiffs' counsel's] attempt to characterize this [c]ourt's ruling [on the motion to amend]. You do not speak for the [c]ourt, and your interpretation of this [c]ourt's order at that time is your interpretation. The defendants obviously have a different interpretation of this [c]ourt's ruling, and this [c]ourt's ruling will speak for itself.
>
> . . . .
>
> [M]y recollection [of the argument on the motion to amend] was that I asked these questions specifically of . . . plaintiffs,. . . was this information available[?] [Plaintiffs responded,] [n]o, it was not. That's the crux of your argument? [Plaintiffs responded,] [t]hat's the crux of [our] argument. So these claims are new claims? [Plaintiffs responded,] Yes. You could not have [brought] these claims when you brought this case? [Plaintiffs responded] [n]o, [we] could not.
>
> And then I asked specifically. . . would you be barred from filing a separate complaint? That was my question to counsel on behalf of the plaintiffs, and the answer was no, we don't believe it would be barred. And then I said well then, what's your prejudice? Right. And that's how that came about.
>
> It wasn't a holding by this [c]ourt in any way or a ruling on whether or not . . . a new complaint, which the [c]ourt did not have the benefit of seeing, right, and was not even drafted, whether that new complaint which has not been filed would be subject to any attack

20

> by . . . defendants that they might make when they look at the complaint.
>
> And so I wanted to make sure that . . . was clear on the record, is . . . that whatever characterization . . . plaintiffs may have of this [c]ourt's ruling is really of no moment.

The court denied the motion, concluding consolidation of the actions would further delay the 2015 litigation and it was not in the interests of justice or judicial economy.

Dismissal of the 2020 Complaint

In May and June 2020, Menas and Cooper Levenson, the Marshall Dennehey defendants, and Rocco and Pepper Hamilton moved to dismiss the 2020 complaint. As stated, counts one through eight asserted tortious actions against Menas. The trial court granted the motion as to the eight counts, finding

> [t]hese claims are clearly barred by the Entire Controversy Doctrine and res judicata, as they are identical to the claims asserted in the 2015 action, and adjudicating these claims again would run contrary to the goals and purposes of the aforementioned doctrines. The objectives of: (1) the promotion of conclusive determinations, and (2) judicial economy and efficiency, are furthered by the application of these doctrines in this instance.

The court also dismissed counts nine through eleven, stating since they were based on the "same factual predicates underlying the legal malpractice

claims asserted in the 2015 case, they are clearly barred by the Law of the Case Doctrine, as the legal malpractice claims asserted in that case were dismissed with prejudice by the [c]ourt, and that decision was re-affirmed multiple times." The court dismissed counts thirteen through fifteen of the 2020 complaint that alleged fraudulent concealment as to Menas, Cooper Levenson, Rocco, Pepper Hamilton, and the Marshall Dennehey defendants for the same reasons.

In addressing counts seventeen and nineteen of the 2020 complaint alleging legal malpractice and negligent supervision/respondeat superior against the Marshall Dennehey defendants, the court found that

> no duty is owed to opposing parties in litigation. See Restatement of the Law Governing Lawyers, § 51, cmt. b (1998). Moreover, [p]laintiffs point to no case law or other legal authority explicitly extending the imposition of a duty to non-clients to the litigation setting. The [c]ourt agrees with the [d]efendants that the extension of such a duty would chill the adversarial process and is not warranted here. As a result, the claims for legal malpractice and negligent supervision fail as a matter of law.

Sanctions and Counsel Fees

Following the dismissal of the 2020 complaint, the Marshall Dennehey defendants, and Menas and Cooper Levenson filed separate motions for sanctions pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1. The court granted these motions on January 25, 2022, stating:

22

[T]he court finds that the filing of this litigation was frivolous and that attorney's fees are warranted. Regarding the Cooper [Levenson] [d]efendants, the record demonstrates the number of times that plaintiffs attempted to relitigate the same issues in the 2015 action through its opposition to the motion to dismiss, which was granted in 2016; motion to reinstate; motion to reconsider[;] motion for leave to appeal[;] motion to vacate the order denying the motion to reinstate; and motion for leave to rejoin the Cooper [Levenson] defendants. To reiterate, the 2020 [a]mended [c]omplaint involved the same nucleus of facts and circumstances that had previously been rejected on six prior occasions in the 2015 litigation.

After defendants submitted their counsel fee applications, plaintiffs cross-moved for reconsideration of the January 25 orders. On June 30, 2022, the court granted plaintiffs' reconsideration motion as to the Marshall Dennehey defendants and denied their request for counsel fees because they were self-represented.

That same day, the court denied plaintiffs' cross-motion to reconsider its order as to Menas and Cooper Levenson and awarded counsel fees to those defendants in the amount of $23,765.50. The judge found the 2020 complaint was filed in bad faith.

23

Motion for Reconsideration in the 2015 Case

Following the dismissal of the 2020 complaint, plaintiffs moved for reconsideration of the January 24, 2020 order denying their motion to file a fourth amended complaint in the 2015 litigation. The court denied the motion.

Conclusion of the 2015 Case

Also following the dismissal of the 2020 complaint, Rocco and Pepper Hamilton moved for summary judgment in the 2015 case. The court granted the motion on December 9, 2021. In a written opinion, the court initially found that, based upon plaintiffs' description of the transaction that led to the litigation, Rocco's and Pepper Hamilton's involvement was limited.

In considering the fraud count, the court stated:

> It does not appear to be disputed that there was a meeting held at Pepper Hamilton, attended by Rocco. Rocco was representing PCHA, and plaintiffs were represented at the meeting by their own counsel. It is undisputed that plaintiff[s] were not represented by Rocco at the meeting or at any other time. It is undisputed in the papers filed with the court that Rocco/Pepper Hamilton did not provide any legal advice to plaintiffs and no evidence has been provided to the court that Rocco/Pepper Hamilton made any representation(s) to plaintiffs that could form the basis for any of the causes of action set forth against Rocco/Pepper Hamilton in the complaint.[]
>
> At this state of the proceedings, in order to avoid the entry of summary judgment on the claim of fraud

plaintiffs are required to provide properly supported facts that show "(1) a material representation of a past or present fact; (2) knowledge by the defendants of its falsity; (3) intention that it be relied upon; (4) reasonable reliance by the other person; and (5) resulting damages." Plaintiff[s] ha[ve] presented no evidence against Rocco/Pepper Hamilton with reference to the above factors (1) through (4); while plaintiffs may or may not have damages, they cannot show that they have suffered damages as a result of fraud by Rocco/Pepper Hamilton. The releases and letter of default do not provide a basis for a claim for fraud against Rocco or Pepper Hamilton; the deposition testimony provided for review by the court likewise provides no basis for such a claim.

The court next addressed tortious interference, stating:

Even assuming that plaintiffs have shown that they had an existing or reasonable expectation of economic benefit or advantage from the PCHA transaction and that Rocco/Pepper Hamilton had knowledge of that expectancy, plaintiffs have not shown that Rocco/Pepper Hamilton wrongfully and intentionally interfered with the expectancy or that [there was] a reasonable probability that the plaintiffs would have received the anticipated economic benefit in the absence of [that] interference. The allegation made by plaintiffs is that Rocco/Pepper Hamilton, in connection with other defendants, participated in a scheme to take money from plaintiffs. At this state of the proceedings plaintiffs are required to provide properly supported facts that would support the claims made by plaintiffs. Properly supported facts, and not conjecture and speculation, are required at this stage and given the lack of same, summary judgment must be GRANTED to Rocco/Pepper Hamilton on count two of the complaint.

25

The court also found plaintiffs could not maintain a claim for conversion against Rocco or Pepper Hamilton because plaintiffs had not alleged or provided any record of monies belonging to plaintiffs that were wrongfully in defendants' possession.

As to plaintiffs' claims of violation of RICO and conspiracy to violate RICO, the court found that while plaintiffs could show that Rocco and Pepper Hamilton were engaged in an enterprise, i.e., the practice of law, that the law practice affected trade or commerce, and that Rocco and Pepper Hamilton participated in the conduct of the affairs of the enterprise, they had presented no evidence that these defendants participated in the enterprise through a pattern of racketeering activity. Therefore, and because the 2015 complaint was filed more than four years after the final wrongful act attributed to these defendants, i.e., the issuance of a default letter dated December 17, 2009, summary judgment on the RICO and related conspiracy count was warranted.

Next, the court found that Rocco and Pepper Hamilton were entitled to summary judgment on the count alleging conspiracy to commit fraud, consumer fraud, tortious interference and conversion because: (1) plaintiffs had not alleged any violation of the Consumer Fraud Act against Rocco and Pepper Hamilton, thereby precluding a claim of conspiracy to violate the Act; and (2)

summary judgment was being entered in defendants' favor on the other substantive claims, which also precluded a claim of conspiracy to commit the torts. Similarly, Rocco and Pepper Hamilton were also entitled to summary judgment on the claim for aiding and abetting the commission of fraud, tortious interference, violation of RICO and conspiracy.

As to the legal malpractice claims, the court stated

> [i]t is undisputed in this matter that Rocco and Pepper Hamilton did not represent plaintiffs at any point during the transaction in question. Additionally, despite plaintiffs' efforts to create a material dispute of fact in the response to defendants' [Statement of Undisputed Material Facts] filed on this motion, plaintiffs made clear in their deposition testimony that they were not invited to rely upon and did not rely upon any opinion, legal advice [or] other legal services from Rocco/Pepper Hamilton.

> The undisputed material facts clearly indicate that plaintiffs cannot maintain a claim against Rocco and Pepper Hamilton for legal malpractice and thus summary judgment must be GRANTED . . . .

The court denied plaintiffs' subsequent motion for reconsideration.

IV.

Orders Appealed From the 2015 Litigation

On appeal, plaintiffs assert the trial court erred: (1) in finding the common knowledge exception was not applicable to the legal malpractice claims against

Menas and Cooper Levenson, thus obviating the need for an AOM; (2) in dismissing the tort claims asserted against Menas and Cooper Levenson because those claims did not require an AOM; (3) in denying the motion to amend the complaint to include newly discovered claims against Menas and Cooper Levenson; and (4) in granting summary judgment to Rocco and Pepper Hamilton.

Counts One Through Three

Plaintiffs required an AOM under N.J.S.A. 2A:53A-26 to support their claims of legal malpractice against Menas and Cooper Levenson in counts one through three of the 2015 complaint. The common knowledge doctrine was not applicable to these circumstances. We affirm the portion of the November 10, 2016 order dismissing counts one through three for the reasons expressed by the court in its oral decision on the same date. R. 2:11- 3(e)(1)(E). The average lay juror could not determine defendants' negligence without the benefit of specialized expert testimony in this complex labyrinth of business transactions. See Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001).

Counts Four, Five, Six, and Seven

In these counts, plaintiffs alleged claims of tortious interference, fraud, conversion, and conspiracy to commit those torts. The trial court dismissed

these claims in its November 10, 2016 order, finding since the factual predicate underlying the counts was the same as that for the legal malpractice claims, plaintiffs needed an AOM to support the actions.

These claims are grounded in tort; they allege tortious actions, not negligence. For example, count four alleges Menas and Cooper Levenson, along with ten other defendants, including Theresa, intentionally interfered with plaintiffs' contracts, agreements, and assignments by formulating a plan to rezone the properties for their own financial benefit. This is not an allegation of negligent representation. Therefore, these counts do not require an AOM to sustain the claim.

There were numerous allegations of improper conduct against Menas and Cooper Levenson, some related to their representation of plaintiffs and others to their intentional wrongful actions during the course of the business dealings. The fact that the allegations all arose out of one set of circumstances does not prohibit causes of actions grounded in both negligence and tort. The difference in the claims became clearer as discovery ensued, revealing further alleged misrepresentations and wrongdoing by Menas.

As the court considered the motion to vacate as a motion for reconsideration, it was authorized, in the interests of justice, under Rule 4:42-

29

2(b), to vacate the prior order regarding the dismissal of the tort claims. The trial court mistakenly exercised its discretion in not doing so. Counts four, five, six, and seven of the 2015 complaint are reinstated against Menas and Cooper Levenson.

Motion to Amend the 2015 Complaint

We turn then to the January 2020 order denying plaintiffs' motion for leave to file a fourth amended complaint. Plaintiffs alleged discovery revealed Menas was the sole owner of TNM, involved in the wrongful receipt and transfer of funds, and he was operating PCHA as "a sham entity to perpetrate the tortious acts and conspiracy to commit [the] same against [p]laintiffs." Plaintiffs sought to add Menas to existing counts one through five, seven and eight.[3]

The court denied the motion, concluding the litigation was over four years old, and to permit the amendment would require a further extension of discovery and delay in trial. Generally, we would defer to the court's discretion in its determination to deny the amendment. See Kernan v. One Washington Park

---

[3]   Because of the earlier dismissal of counts against Menas and Cooper Levenson, the counts were renumbered in later iterations of the complaint. In the proposed fourth amended complaint, counts one through three were fraud, tortious interference, and conversion. Count four alleged a violation of RICO, count five alleged conspiracy to commit violation of RICO, count seven alleged a conspiracy to commit the tortious actions and count eight was aiding and abetting the tortious acts.

A-3660-21

Urb. Renewal Assocs., 154 N.J. 437, 457 (1998).  However, in light of our conclusion that the tort claims were erroneously dismissed, we must reverse the portion of the January 24, 2020 order denying amendment of the 2015 complaint regarding the previously pled claims against Menas as to fraud, conversion, tortious interference, conspiracy, and aiding and abetting the torts, and violating RICO.  Plaintiffs are permitted to amend the fourth complaint regarding counts one through five, seven, and eight.

In the same motion, plaintiffs also sought leave to amend the complaint to assert two new claims of legal malpractice against Menas and Cooper Levenson, as well as a claim against Cooper Levenson for "negligent supervision/respondeat superior" in connection with Menas's misdeeds (counts twelve through fourteen).  These counts are titled as "legal malpractice" and allege Menas and Cooper Levenson breached their duty to plaintiffs in the course of their attorney-client relationship.  As discussed above, these claims required an AOM and were properly dismissed.  We affirm the portion of the January 24, 2020 order denying the amendment of the complaint to include counts twelve through fourteen.

31

Order Granting Rocco and Pepper Hamilton Summary Judgment

Plaintiffs contend the trial court erred in granting summary judgment to Rocco and Pepper Hamilton. We review the trial court's determination de novo, applying the same standard that governs the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). We must determine, when viewed in the light most favorable to the non-movant, whether a genuine issue of material fact precludes the grant of summary judgment. Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71-72 (2024); R. 4:46-2(c).

In our discussion above, we set forth the court's reasons for granting Rocco and Pepper Hamilton's motion. We affirm the order substantially for the reasons expressed by the court in its well-reasoned December 9, 2021 written opinion.

Summary judgment was appropriate here given: (1) the lack of an attorney-client relationship between plaintiffs and Rocco; (2) the absence of any evidence Rocco provided plaintiffs with legal advice; (3) the absence of any misrepresentations made by Rocco to plaintiffs, including as to the man purporting to be Russo at the 2009 meeting; and (4) the absence of any damages suffered by plaintiffs and attributable to Rocco.

V.

The 2020 Complaint

For the reasons stated below, in reference to each category of counts in the 2020 complaint, we affirm the August 28, 2020 order dismissing the complaint.

a. Counts One Through Eight

These are the tort claims alleged against Menas that were erroneously dismissed by the trial court in the 2015 litigation. For the reasons already stated, the dismissal of these causes of action has been vacated and the counts will be reinstated in the 2015 complaint.

b. Counts Nine Through Eleven

These counts allege legal malpractice and negligent supervision/respondeat superior against Menas and Cooper Levenson. For the reasons discussed above, these claims cannot be asserted against Menas and Cooper Levenson without a supporting AOM. As we have found the claims were not cognizable in the 2015 complaint, plaintiffs cannot reassert them in a new complaint.

c. Counts Thirteen Through Fifteen

These counts allege fraudulent concealment as to Menas, Cooper Levenson, Rocco, Pepper Hamilton, and new defendants, the Marshall Dennehey defendants. The Marshall Dennehey defendants represented Menas and Cooper Levenson in the 2015 litigation. Plaintiffs alleged all defendants failed to disclose during discovery in the 2015 action that Menas was the sole member of TNM and that Menas and Ford controlled and operated PCHA as a sham entity.

In dismissing these counts, the trial court relied on the entire controversy doctrine among other reasons. "[T]he entire controversy doctrine seeks to assure that all aspects of" the controversy between those who are parties to a litigation be included in a single litigation. Olds v. Donnelly, 150 N.J. 424, 431 (1997); R. 4:30A. "The goals of the [entire controversy] doctrine are to promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy." Olds, 150 N.J. at 431. Generally, application of the doctrine is left to judicial discretion based upon the factual circumstances in individual cases. See Oliver v. Ambrose, 152 N.J. 383, 395 (1998).

A-3660-21

When a party had a reasonable opportunity to fully litigate their claim in an earlier action, the entire controversy doctrine may be invoked to bar the raising of that claim in a second proceeding. Karpovich v. Barbarula, 150 N.J. 473, 481 (1997); Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C., 321 N.J. Super. 275, 284 (App. Div. 1999). The doctrine does not, however, apply to "bar component claims that are either unknown, unarisen or unaccrued at the time of the original action." Hillsborough Twp. Bd. of Educ., 321 N.J. Super. at 283.

Plaintiffs contend they were unaware of these allegations until after Menas and Cooper Levenson were dismissed from the 2015 litigation. However, plaintiffs have conceded they knew Menas was the sole member of TNM in 2018. Therefore, when they moved for leave to amend their complaint in 2019, they must have been aware at that time of the alleged concealment of that information.

Plaintiffs did not include fraudulent concealment as a cause of action in the proposed fourth amended complaint. That claim should have been included in the application for the court to consider if, in fact, there was new evidence to warrant an amendment of the complaint. Under the entire controversy doctrine,

35

plaintiffs cannot file a new action for claims it should have included in the prior litigation arising out of the same set of facts.

d. <u>Dismissal of Counts Seventeen and Nineteen</u>

Plaintiffs contend the trial court erred in dismissing counts seventeen and nineteen alleging legal malpractice and negligent supervision/respondeat superior against the Marshall Dennehey defendants. Given the lack of privity between plaintiffs and these defendants, we agree with the trial court's reasoning in dismissing counts seventeen and nineteen.

The court did not err in dismissing the 2020 complaint in its entirety.

<u>Sanctions</u>

Plaintiffs assert the court erred in imposing sanctions for the filing of the 2020 complaint against Menas and Cooper Levenson and awarding those defendants counsel fees. The court found the pleading frivolous as to Menas and Cooper Levenson because plaintiffs' attempt to reinstate their claims was rejected on multiple occasions. As the procedural history of the case stood before the court, that premise was true.

However, this court has concluded that the claims of tortious conduct against Menas and Cooper Levenson were erroneously dismissed. Therefore, the sanctions, including the award of counsel fees, must be vacated. Although

we agree the 2020 complaint was properly dismissed, we have stated that the tort claims pled in the new complaint were improperly dismissed in the 2015 litigation and ordered their reinstatement. Therefore, the 2020 filing was not frivolous under N.J.S.A. 2A:15-59.1(b)(1) and (2) and defendants were not entitled to sanctions.

VI.

In sum: (1) we vacate the portion of the November 10, 2016 order dismissing counts four, five, six, and seven against Menas and Cooper Levenson and remand to the trial court for reinstatement of those counts; (2) we vacate the portion of the January 24, 2020 order denying leave to amend counts one through five, seven, and eight against Menas in the 2015 complaint; plaintiffs may amend those counts on remand; and (3) we reverse the June 30, 2022 order granting Menas and Cooper Levenson counsel fees.

The remainder of the orders on appeal are affirmed. The litigation shall proceed in the trial court only against Menas and Cooper Levenson and solely on the specified counts as amended in the 2015 complaint.

Affirmed in part, reversed in part, vacated in part, and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3660-21